**UNITED STATES of America**

v.

**James WILSON, Appellant.**

**UNITED STATES of America**

v.

**Charles WHITTAKER, Appellant.**

**Nos. 23094, 23095.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1970.

Reargued En Banc Feb. 26, 1971.

Decided June 18, 1971.

Mr. Jerome I. Chapman, Washington, D. C. (appointed by this Court) for appellants.

Mr. John Ellsworth Stein, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Richard A. Hibey, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges, sitting en banc.

PER CURIAM:

 These are appeals from judgments of conviction of armed robbery and assault with a deadly weapon, sentencing appellants to imprisonment for concurrent terms of five to fifteen years for the robbery and three to ten years on the assault count. Appellants urge reversal on several grounds, including (1) that the trial court erred by adding certain statements to the standard "Allen" charge regarding the jury's duty to reach a verdict, and (2) that this court, in the exercise of its supervisory power, should prohibit use of the Allen charge in this circuit altogether. Whether further use of the Allen charge will be permitted is being considered in No. 22,768, United States v. Thomas, en banc, D.C. Cir., 449 F.2d 1177. As for this case we find no reversible error, since neither defendant objected to the charge as given, either initially or as part of the supplementary instructions, and the trial court's formulation did not in either instance constitute plain error. United States v. Dixon, 135 U.S.App.D.C. 401, 419 F.2d 288 (1969); Fulwood v. United States, 125 U.S.App.D.C. 183, 369 F.2d 960 (1966). Appellants' remaining claims, concerning pre-trial identification and the admission of impeachment evidence, are referred to the original panel (Circuit Judges Leventhal, Robinson and Robb) for disposition.

So ordered.

### Original Panel Decision

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

These are appeals from judgments of conviction of armed robbery and assault with a dangerous weapon, sentencing appellants to imprisonment for concurrent terms of five to fifteen years for the robbery and three to ten years on the assault count. This court, sitting en banc, has rejected appellants' contentions regarding the Allen charge, and has referred their remaining claims to this panel for disposition. We have examined these claims, and conclude that appellants' convictions should be affirmed.

The complainant, Mr. Alphonso Ligon testified at trial that on Sunday morning, July 28, 1968, at about 11 o'clock, he was approached by three men on Fifteenth Street, N.W., between T and U Streets. One of the men was carrying a set of golf clubs, which he offered to sell complainant. When Mr. Ligon refused, one of the men commented, "You got a good looking watch on," and started to pull the watch from Mr. Ligon's wrist. Mr. Ligon put up a fight, and someone threatened to cut his arm off. At that point, one of the men, according to Mr. Ligon, pulled a knife. After gaining possession of the watch, the group walked away. Mr. Ligon was able to identify appellant Wilson as the man

who took his watch, and Whittaker as the man who pulled the knife.[1]

A. Appellants' first contention relates to the alleged fact that shortly after the robbery, Mr. Ligon joined Officer Salvatore Petros of the Metropolitan Police Department in a search for the robbers, and, after appellants were picked up near the scene of the crime, and brought back to the squad car, Mr. Ligon identified them as his assailants. Appellants claim that this identification was tainted by the suggestive circumstances surrounding it, and that the admission of complainant's in-court identification of the appellants violated their due process rights. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

We find this claim to be without merit. It is based on appellants' factual assumption that "Ligon's identification of appellants * * * was not made until after the officer had first pointed them out and placed them under arrest," (Tr. 37), an assumption that the record simply does not support. Mr. Ligon testified, in response to a question posed by the court, that it was he who had pointed out appellants to Officer Petros (Tr. 38); when the Officer asked whether those were the gentlemen, Ligon told him, "Yes." (Tr. 46) This occurred before the Officer ordered the men to "halt," and indeed before he got out of his patrol car to make the arrest. (Tr. 46–47).

Even if the identification had occurred immediately after the arrest, as appellants claim, we would not find that it violated principles of fundamental fairness. Mr. Ligon had given Officer Petros a detailed description of the robbers and had participated in the search for them. In such circumstances it was reasonable for the officer, upon returning to the squad car with two arrestees, to ask the complainant whether these were the men who had robbed him shortly before. Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969); Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967). Nor do we find Ligon's identification so inherently unreliable as to give rise to a problem of fairness. The robbery occurred in broad daylight, and Mr. Ligon was able to remember salient characteristics of clothing of his assailants, even though because of color-blindness his description of Wilson's shirt differed somewhat from that of Mr. Epps. In short, we find appellants' *Stovall* claim to be without merit.

B. Appellants also claim that error was committed on three occasions when the trial court refused to permit impeachment of Mr. Ligon through his prior inconsistent statements. Three statements are involved.

(1) The complainant, Mr. Ligon, testified at trial that appellants were not coming out of the Dunbar Hotel when they were arrested at 15th and U. Defense counsel asked him whether he had stated, in his grand jury testimony, that "They was coming out of the Dunbar Hotel, Fifteenth and U Streets." In reply Mr. Ligon explained, "You understand out there they have what they call an outdoor cafeteria. That is where they was at. I didn't say they was coming out of the Dunbar." (Tr. 51.) The prosecutor objected to further questioning on this point and was sustained by the trial court.

(2) Mr. Ligon testified that Officer Petros stopped the patrol car at the Dunbar Hotel and "he got out himself." He was then confronted with his testi-

---

[1] Mr. Frank Epps testified that shortly after the time of the robbery, he was approached by a group of four men who offered to sell him golf clubs, which he declined. He was then shown a wristwatch and asked if he wanted to buy it for $10.00. Mr. Epps, a cousin of Mr. Ligon, testified that he recognized the watch as belonging to complainant, and refused the offer. He was able to identify Wilson, at trial, as the man who offered to sell the watch. He stated that this man had been wearing khaki-colored trousers and a shirt "with checkerboard or stripes on red color." (Tr. 90). Mr. Ligon had testified that appellant Wilson wore a brown checkered shirt (Tr. 40), but it emerged on cross-examination that Mr. Ligon was color-blind. (Tr. 74).

mony before the grand jury that "the officer called [the appellants] over to the car." Mr. Ligon replied that the "officer got out of the car and called to them. They stopped." (Tr. 52.) He stated further that he did not remember giving the answer read to him from the grand jury transcript. The trial court then instructed the jury as to the limited purpose for which this grand jury testimony was introduced, but refused the prosecutor's request for an instruction concerning the jury's duty to find that the statements were in fact inconsistent before using them to weigh the witness's credibility.

(3) Mr. Ligon testified that appellant Whittaker wore a black shirt, carried the golf bag and pulled the knife while appellant Wilson struggled to take the watch from his arm. He was asked whether he had given certain testimony at the preliminary hearing and before the grand jury to the effect that the man who took the watch from his arm was the same man who pulled the knife.[2] Mr. Ligon acknowledged his statements during the preliminary hearing, but remarked, "Not the one that took the watch that had the knife." (Tr. 62). However, Mr. Ligon refused to adopt the statements read from the grand jury transcript, stating, "No, I didn't say he took out a knife. I said the fellow that had the clubs taken out the knife. The one that taken the watch, he is the one told me he'd cut my arm off. He didn't pull the knife." (Tr. 64.) Defense counsel then said, "I will allow [Mr. Ligon] to qualify." The prosecutor objected to the impeachment on the ground that he did not believe an inconsistency had been shown. The trial court agreed

and sustained the objection, telling the defense counsel that if he had something else he thought would impeach complainant, he could read it. (Tr. 65.)

At the close of the evidence, and out of the jury's presence, defense counsel offered the grand jury and preliminary hearing transcripts into evidence. The prosecutor objected on the ground that "the witnesses did not deny that the statements which were attributed to them in their appearances before the grand jury * * * were as counsel stated they were." The trial court sustained the objection.

Appellants claim that the exclusion of these transcripts was prejudicial because it had the effect of leaving the jury in doubt as to whether the inconsistent statements were in fact made. As to the first two impeachment matters—relating to appellants' emergence from the hotel and Officer Petros' actions in summoning them—this contention is plainly without substance. The jury was made aware of the differences between trial testimony and pre-trial statements, and of the witness's explanations. The court did not err in refusing to permit counsel to pursue Mr. Ligon's prior statements further.

Since the Dunbar Hotel had an outdoor cafeteria, there was no meaningful, if any, inconsistency between Ligon's statement at trial that the appellants were "at fifteenth and U at the Dunbar Hotel," and his previous testimony that "they were coming out of the Dunbar." Likewise, the grand jury testimony that Officer Petros "called [the appellants] over to the car" is consistent with Ligon's statement at trial that "he got

2. Defense counsel read a passage from the preliminary hearing transcript, including the following:

Q: Now, which one grabbed the watch? The one with the golf clubs or another one?

A: No, sir, not the one with the golf clubs. And then it was said, "Wait a minute," and the other one got out a knife and he was pulling it and I was holding it. He said, "Cut his arm off." He took his knife like he

was going to cut me, but he didn't, Your Honor. But he took the watch. The defense counsel also read part of the grand jury transcript, including the following:

A: Well, I told them I didn't have eight cents and one said, "You got a good-looking watch on you," and he grabbed me trying to pull it off.

Q: Was he threatening you with anything?

A: Yes, a knife. He took a knife out and he told me he'd cut my arm off.

himself out." Mr. Ligon explained this when he said, "[The] officer got out of the car and called to them."

The third impeachment effort presents a more difficult problem. While the Government has attempted an intricate rationalization of Mr. Ligon's various statements, we conclude that, taken in their fair import, these statements are irreconcilable. We therefore conclude that the trial court erred in refusing to permit defense counsel to pursue Ligon's pre-trial testimony that the man who wielded the knife was also the man who pulled the watch from complainant's wrist. However this error, taken in the context of the trial as a whole, was relatively minor in its impact, and we do not think the prejudice was so substantial as to result in a determination of reversible error. Therefore we affirm the convictions.

Affirmed.