344 A.2d 493

**COMMONWEALTH of Pennsylvania**

v.

**Marvin PRICE, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 25, 1974.

Decided Oct. 3, 1975.

David E. Auerbach, Asst. Public Defender, Media, for appellant.

Ralph B. D'Iorio, Asst. Dist. Atty., Chief, Appeals Div., Vram Nedurian, Jr., Asst. Dist. Atty., Stephen J. McEwen, Jr., Dist. Atty., Media, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

The appellant, Marvin Price, was convicted of various counts of burglary, robbery, and larceny arising out of a holdup at the Honeysuckle Farms Ice Cream Parlor on January 24, 1971. Post-verdict motions were denied. On appeal, the Superior Court affirmed. Judge Hoffman filed a dissenting opinion in which Judge Spaulding joined. Appellant's petition for allowance of appeal was granted, but limited to the issue of whether the trial court erred in failing to grant a defense motion for a mistrial based on an unauthorized visit made to the scene of the crime by one of the jurors during a break in the jury's deliberation.

The jury in this case retired to deliberate on October 20, 1971. After about five and one-half hours of deliberation, the jury was brought back to the court room and inquiry was made as to whether they might reach a verdict within a reasonable time. All of the jurors indicated they would not. Over defense counsel's objections, the jury was then excused at 5:45 p. m. and permitted to go home for the evening. They were admonished not to discuss the case with anyone or read any papers.

The next morning, about one-half hour after the jury had resumed its deliberations, the trial court received a note from the foreman of the jury informing the court that one juror had visited the scene of the crime and the Jeffrey Street area where the appellant and his co-defendant had been arrested. The foreman also told the court that the juror had discussed his visit with some of the other jurors. The note inquired as to whether any rights had been prejudiced. The note also asked whether the appellant and his co-defendant could "be considered separately with varying degrees of guilt and innocence as the indictments list both men." The trial court instructed the jury not to consider the unauthorized view in reaching a verdict, and also informed them that different verdicts were permissible. The Court made no inquiry about the unauthorized visit at this time.

The jury resumed deliberations and later returned a verdict finding the appellant guilty and his co-defendant not guilty of the crimes charged. After the verdicts were received, inquiry was made of the jurors, and several admitted the discussion with the juror who had made the unauthorized visit. This juror was not identified, and thus no inquiry was made of him. The jurors who spoke up said that the juror who made the unauthorized visit had told them that he went to familiarize himself with the geography of the area, and that he went up and down the various streets. One juror said he overheard talk about the house numbers on Jeffrey Street. The jurors who had received or overheard the discussion from the juror who made the unauthorized visit asserted that they were not influenced by what they heard in reaching their verdict.

A juror is not permitted to make an unauthorized view of the scene of the crime. *See Commonwealth v. Gockley,* 411 Pa. 437, 192 A.2d 693 (1963) and *Commonwealth v. Filer,* 249 Pa. 171, 94 A. 822 (1915). Even in civil cases unauthorized views have been con-

demned. *Friedman v. Ralph Brothers, Inc.*, 314 Pa. 247, at 249, 171 A. 900, at 901 (1934) said:

"We cannot condemn too severely the act of any juror personally viewing the place of an accident or any matter subject to judicial investigation which is not performed under the security and protection of the court. Such acts are improper, and a juror should not only be censured for such conduct but, if necessary, punished by the court, and, if the act was of sufficient importance, a mistrial should be directed."

In another context, *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) emphasized the impermissibility of a conviction based upon evidence gathered by jurors outside the judicial process. *See also Commonwealth v. Harkins*, 459 Pa. 196, 328 A.2d 156 (1974); *Commonwealth v. Santiago*, 456 Pa. 265, 318 A. 2d 737 (1974); *Commonwealth v. Bobko*, 453 Pa. 475, 307 A.2d 576 (1973); *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1972); *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972).

The appellant contends that the unauthorized view by the juror should automatically require a new trial. Some jurisdictions have taken this view. *See People v. De-Lucia*, 20 N.Y.2d 275, 282 N.Y.S.2d 526, 229 N.E.2d 211 (1967); *People v. Hollingsworth*, 22 Mich.App. 545, 177 N.W.2d 687 (Ct. of Apps., 1970). *See also Farese v. United States*, 428 F.2d 178 (5 Cir. 1970). *See also Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). We do not find it necessary, however, to decide in this case whether every unauthorized view by a juror constitutes reversible error. In the context of this case, the potential for prejudice requires reversal. *See Commonwealth v. Harkins*, 459 Pa. 196, 328 A.2d 156 (1974); *Commonwealth v. Santiago*, 456 Pa. 265, 318 A. 2d 737 (1974); *Commonwealth v. Bobko*, 453 Pa. 475, 307 A.2d 576 (1973); *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972).

In this case significant issues were raised at trial concerning the physical aspects of the areas visited by the juror. A brief resume of the circumstances leading to the appellant's arrest makes this evident. When the robbery occurred at the Honeysuckle Farm Ice Cream Parlor on January 24, 1971, two men, one carrying a pistol, went inside the ice cream parlor. There was also some evidence that a third man may have remained outside as a look-out. Police arrived at the scene shortly after the robbery and followed three sets of footprints in the snow. After several blocks, one set of footprints went in a different direction than the other two. The two sets of footprints led to a house at 714 Jeffrey Street, about eight blocks away from the scene of the crime. The footprints went up the steps at the front of the 714 Jeffrey Street house. This house was located next to an alley. As the police were observing this house, three men were seen exiting from another house nearby. The 714 Jeffrey Street house and the house from which the three men were exiting are separated by the alley, and by another house across the alley from the 714 Jeffrey Street house. One of these three men, appellant's co-defendant, lived in the house out of which the group was coming. The three men were arrested and brought to the ice cream parlor within one-half hour of the robbery. One of the three men, the appellant Marvin Price, was identified as a participant in the robbery by two witnesses. His co-defendant was identified by one witness. The third man was not identified and was not charged by the police.

During the trial the defense contended that the appellant, his co-defendant, and the third man originally arrested had been in the co-defendant's home during the time of the robbery. Evidence was presented that, at the time of the robbery, garages existed at the rear of the houses on Jeffrey Street which would have made it very difficult for anyone to go into the house at 714 Jeffrey

Street, exit from the rear, and get into the co-defendant's house from the back. Based on this, the defendants contended that it would have been difficult, if not impossible, for anyone to have gotten from 714 Jeffrey Street to the co-defendant's nearby home without leaving additional footprints. The prosecution introduced no evidence to indicate that any tracks were found leading from 714 Jeffrey Street to the house from which the three men were seen exiting by the police. At the time the juror made the unauthorized visit, the scene on Jeffrey Street was not as it was the night of the robbery. The garages in the rear of the houses on Jeffrey Street had been torn down.

The juror who made the unauthorized visit was never identified and was not questioned. What influence the visit had on that juror is not and cannot be known. It is known that that juror passed along some information to the other jurors. Even if we accept the assertion of the other jurors that they were not influenced, we would have to speculate about the prejudicial impact that the unauthorized visit had on the juror who made it. It is quite possible that the unauthorized visit could have swayed this one juror toward conviction, and that this juror's new found belief in appellant's guilt could then have powerfully influenced the other members of the jury to convict without the other jurors ever feeling influenced by the description of the unauthorized visit. It cannot be said beyond a reasonable doubt, that the unauthorized visit did not contribute to appellant's conviction. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973); *Commonwealth v. Padgett*, 428 Pa. 229, 237 A.2d 209 (1968). Under these circumstances, the conviction cannot stand.

Judgment of sentence reversed.

EAGEN, J., concurred in the result.