Stewart R. IRVING, Appellant,

v.

Floyd B. BULLOCK, Jr., Appellee.

No. 2132.

Supreme Court of Alaska.

May 10, 1976.

---

Robert M. Libbey and Douglas J. Serdahely, Libbey and Serdahely, Anchorage, for appellant.

Irving S. Bertram and Richard O. Gantz, Hughes, Thorsness, Lowe, Gantz and Powell, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J. and RABINOWITZ, CONNOR, ERWIN and BURKE, J.

BURKE, Justice.

Stewart R. Irving, appellant, filed an action in superior court against Floyd B. Bullock, Jr., appellee, and John Hett, for damages to his automobile and personal injuries suffered in two separate rear end collisions. At trial, the amount of damages and the allocation of damages between the defendants were hotly contested. The jury rendered a verdict against Bullock for $7,153.45, and against Hett for $315.28. Irving filed this appeal, alleging error in certain instructions given to the jury, in the trial court's denial of his motion for a new trial, and in the court's award of attorney's fees.[1]

On December 24, 1969, Bullock collided with Irving causing some damage to Irving's car. Shortly after the collision Irving began to suffer from coughing, headaches, numbness in the fingers of one hand, and pain in his neck, chest and shoulders.

On June 4, 1970, Hett collided with Irving, again damaging Irving's car. Thereafter, Irving's physical symptoms were aggravated for a short period of time.

Due to pain, Irving did not work from the time of the first collision until April, 1971. He continued to suffer from pain and other symptoms, although to a lesser extent, until he underwent an operation for carpal tunnel syndrome (thickening of a nerve in the wrist) in March of 1973. Thereafter, his recovery was rapid.

## I JURY INSTRUCTIONS

Irving contends that two instructions[2] on the duty to prevent the aggravation of in-

---

1. Irving's appeal as to Hett has been dismissed due to settlement.

2. Instruction No. 38:
 It is the duty of any person who has been injured to use reasonable diligence and reasonable means under the circumstances in order to prevent the aggravation of such injuries to mitigate his damages and to effect a recovery.
 Instruction No. 41:
 It is the duty of a person who has been injured to use reasonable diligence in caring for his injuries and reasonable means to prevent their aggravation and to accomplish healing.

When one does not use reasonable diligence to care for his injuries, and they are aggravated as a result of such failure, the liability, if any, of another whose act or omission was a proximate cause of the original injury, must be limited to the amount of damage that would have been suffered if the injured person himself had exercised the diligence required of him.

From the mere fact that a competent physician advised an injured person to submit to a course of treatment or operation we are not justified in inferring that the injured person was negligent or unreasonable in declining such treatment or operation. Other factors as they confronted

juries and to accomplish healing were erroneously given, since there was no evidence to support them. We hold that there was sufficient evidence to support the giving of the instructions.

■ It appears that many of Irving's symptoms were related to his carpal tunnel syndrome; in any case, these symptoms disappeared after the operation on his wrist. The carpal tunnel syndrome was first diagnosed in March, 1971. Irving testified that the operation to correct that condition had been suggested to him at that time and again later by another doctor. Although the operation is a relatively simple one, with a good record of success, Irving did not submit to surgery until March, 1973. Given this evidence, an instruction on the duty to use reasonable diligence to care for one's injuries was not improper.[3] The instruction also allowed the jury to consider the possibility that Irving behaved reasonably in waiting to have the operation.

■ Irving also argues that the giving of Instruction No. 40 [4] instead of his proposed instruction was error. Instruction No. 40 sets out the rule that a person with a pre-existing condition or disability who suffers an injury may recover damages for the aggravation of the condition, even though a healthy person would not have suffered such damage, but may not recover damages for the condition as it existed prior to the injury. We believe that the instruction is a sound statement of the law, and we are unable to find more than a semantic difference between that instruction and Irving's proposed instruction on the same topic.

■ It is Irving's further contention that there was no basis in the evidence for this instruction. However, Irving admittedly suffered from some condition or disability when he was hit by Hett, some months after his collision with Bullock, and the instruction was proper in order to give the jury some way to determine the damages to be assessed against Hett. It also appears from the record that Irving had degenerative changes in his cervical spine which appeared in his X-rays. This condition is quite common in older men, and does not necessarily cause pain, although an accident may aggravate it. Irving did suffer neck pain after the first accident, which gradually faded until it was no longer a problem at the time of his carpal tunnel operation. The jury could have reasonably inferred that Irving's neck pain resulted from an aggravation of his neck condition, and an instruction on the law in this area was therefore appropriate.

■■ Irving's final objection to Instruction No. 40 is that it failed to put the burden of proof upon the defendant to show what portion of the damages resulted from the pre-existing condition. We do not decide this issue as it was not raised at trial;[5] the objection made to Instruction

---

the injured person must be considered in determining whether, although he refused to follow the physician's advice, he nevertheless exercised reasonable diligence in caring for himself and his injuries.

3. Restatement of Torts (Second) § 9.8; McCormick on Damages § 36 (1935).

4. Instruction No. 40:
A person who has a condition or disability at the time of an injury is not entitled to recover damages therefor. However, he is entitled to recover damages for any aggravation of such preexisting condition or disability proximately resulting from the injury.
This is true even if the person's condition or disability made him more susceptible to the possibility of ill effects that [sic] a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury.
Where a preexisting condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional injury caused by the aggravation.

5. Rule 51(a), Alaska Rules of Civil Procedure, provides in part:
No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection.

No. 40 at trial concerned only the lack of a factual basis for the instruction. There must be plain error before this court will review the propriety of giving an instruction where no objection was made at trial.[6]

## II MOTION FOR NEW TRIAL

Irving alleges as error the trial judge's denial of his motion for a new trial on the grounds that the jury failed to award him damages for pain and suffering. This court has held that the granting of a new trial lies within the discretion of the trial court, and that its decision on such a motion will only be reversed "in the most exceptional circumstances and to prevent a miscarriage of justice."[7] That is not the situation here.

Irving correctly points out that under *Walker v. Alaska Road Commission,* 388 P.2d 406 (Alaska 1964) and *Morrison v. State,* 516 P.2d 402 (Alaska 1973), a verdict which does not include damages for pain and suffering where there is substantial and uncontroverted evidence of such pain and suffering is inconsistent and inadequate. In those cases, however, the damages were determined by judges, and the lack of an award for pain and suffering was clear on the record. Here, Irving has failed to show that the jury verdict in fact did not include damages for pain and suffering.

There is nothing in the amount of the verdict or on its face which indicates that these damages were omitted.[8] Irving's argument rests entirely upon five affidavits from jurors[9] saying that the jury did not award such damages. This court has repeatedly said that it will not consider juror affidavits for the purpose of impeaching the jury verdict, except in cases of fraud, bribery, or other obstructions of justice.[10] Nothing of that nature appears here, so we disregard the affidavits.

---

6. *Nordin Construction Company v. City of Nome,* 489 P.2d 455, 471 (Alaska 1971); *Merrill v. Faltin,* 430 P.2d 913, 917 (Alaska 1967).

7. *Sloan v. Atlantic Richfield Company,* 541 P.2d 717 (Alaska 1975); *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 90–91 (Alaska 1974); *Fruit v. Schreiner,* 502 P.2d 133, 144 (Alaska 1972); *Ahlstrom v. Cummings,* 388 P.2d 261, 262 (Alaska 1964).

8. *See Shaw v. Browning,* 59 Wash.2d 133, 367 P.2d 17, 19 (1961); *Thompson v. Iannuzzi,* 403 Pa. 329, 169 A.2d 777 (1961); *Mosley v. Dati,* 363 Mich. 690, 110 N.W. 2d 637, 638 (1961). It is suggested that the verdict against Hett matches the amount of an estimate of damage to the car, thus indicating a failure to award pain and suffering damages; no such allegation is made about the verdict against Bullock. Since Hett is not a party to this appeal, what the verdict on its face reveals as to damages awarded against Hett is irrelevant.

9. The trial judge expressly gave the attorneys for the parties permission to speak to the jurors after trial.

10. *Des Jardins v. State,* Op. No. 1245 (Alaska 1976); *Martinez v. Bullock,* 535 P.2d 1200 (Alaska 1975); *Gafford v. State,* 440 P.2d 405, 418–419 (Alaska 1968); *Watson v. State,* 413 P.2d 22, 24 (Alaska 1966); *West v. State,* 409 P.2d 847 (Alaska 1966).

We have noted a significant number of recent appeals in which juror affidavits have been used in attempts to impeach the jury verdicts for reasons other than those set out above. It may be proper for counsel to in-interview jurors for educational purposes or for discovery of an obstruction of justice. However, interrogation of jurors for the purpose of discovering "errors" which are not grounds for impeaching the verdict deprives jurors of the protection from harassment which the rule seeks to give them. See Code of Professional Responsibility, DR 7–108, EC 7–29, 7–31. The Ninth Circuit Court of Appeals has declared it unethical even to interview jurors about the course of their deliberations. *Northern Pacific Railway v. Mely,* 219 F.2d 199, 202 (9th Cir. 1954). Henceforth, an attorney wishing to obtain evidence concerning the behavior of jurors in the performance of their duty should first file a motion in the trial court for leave to do so, stating in detail the reasons therefore. The trial court shall weigh such applications with great care, granting leave to make such an inquiry only where it appears that there is a strong likelihood that an obstruction of justice may have occurred. If the motion is granted, the court shall specify the manner in which such evidence to be obtained.

■ Irving also argues that the verdict was "patently inadequate" in amount,· failing to compensate him for proven damages. This point was not raised below in the motion for a new trial, or on appeal in the statement of points on appeal, and therefore we do not consider it.[11]

## III . ATTORNEY'S FEES

Irving's final claim of error concerns the award of attorney's fees and the interaction of Rules 68[12] and 82,[13] Alaska Rules of Civil Procedure. Irving filed suit against Bullock and Hett in November, 1971. On April 3, 1973, Hett filed an offer of judgment for $1,000, which was not accepted. On April 26, 1973, Bullock filed a $10,000 offer of judgment, which was superseded by a $15,000 offer filed the next day; neither was accepted. On June 4, 1973, after eight days of trial, the jury returned verdicts which were less than the offers of judgment.

■ Using the non-contested figures in Rule 82, the trial court awarded Irving attorney's fees of $865.35 against Bullock and $47.39 against Hett, for the period of time preceding the offers of judgment. He awarded $6,500 to each defendant for the periods after their offers of judgment. Thus, exclusive of costs, Irving was to receive $8,018.80 from Bullock, while paying

11. *Hootch v. Alaska State-Operated School System*, 536 P.2d 793, 808, n. 58 (Alaska 1975) ; *Miller v. City of Fairbanks*, 509 P.2d 826, 829 (Alaska 1973) ; *Moran v. Holman*, 501 P.2d 769, 770, n. 1 (Alaska 1972).

12. Rule 68, Alaska Rules of Civil Procedure, provides in part:
At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. . . .

13. Rule 82, Alaska Rules of Civil Procedure, provides in part:
*(a) Allowance to Prevailing Party as Costs.*

(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law :

### ATTORNEY'S FEES IN AVERAGE CASES

| | Contested | Without Trial | Non-Contested |
|---|---|---|---|
| First $2,000 | 25% | 20% | 15% |
| Next $3,000 | 20% | 15% | 12.5% |
| Next $5,000 | 15% | 12.5% | 10% |
| Over $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees·for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount. .

(2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

(3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

him $6,500, leaving a net of $1,518.80.[14] While this court has left the award of attorneys' fees in the trial court's discretion, and the exercise of that discretion will not be disturbed unless manifestly unreasonable,[15] we hold that there was error in this case.

 It appears that the imbalance in fee awards resulted from too strict an interpretation of Rule 68, Alaska Rules of Civil Procedure, pertaining to offers of judgment. The purpose of Rule 68 is to encourage settlement; it requires a plaintiff who recovers less than the defendant's rejected offer of judgment to forego costs, including attorney's fees, for the period after the offer of judgment, and to pay the defendant's costs for that period. Since offers of judgment must be made more than ten days before trial, a plaintiff who rejects an offer of judgment will always risk the substantial fees resulting from trial. The harshness of the penalty incurred by the plaintiff who does not recover more than the offer of judgment is mitigated somewhat by our decision in *Jakoski v. Holland,* 520 P.2d 569 (Alaska 1974), which held that attorney's fee awards under Rule 68, like those under Rule 82,[16] are to *partially* compensate the prevailing party.

 Here it appears that radically different standards of partial compensation were applied to plaintiff and defendant. Irving's attorney became involved with the case in January, 1970; he engaged in vigorous discovery, participating in ten depositions before Bullock's offer of judgment. His affidavit showed that he spent approximately 300 hours on the case up to the offer of judgment. The trial judge expressly found that the case was unusually complex, and that the parties had litigated in good faith, yet he awarded $865.35 to Irving against Bullock, while Bullock received

$6,500 in fees for a five-week period including eight days of trial and one deposition. His attorney submitted an affidavit claiming $7,661 in fees. While we do not ask that plaintiffs and defendants in this situation each be awarded the same percentage of their claims for attorney's fees, we do remand this part of the case for a more balanced disposition of the claims for fees. In circumstances like these, where it appears that the trial court applied radically different standards of partial compensation in awarding attorney's fees to the parties, we will consider such awards to be an abuse of discretion absent findings or an explanation by the trial court supporting such disparate treatment.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**14.** Before settlement, as a result of the award of $6,500 attorney's fees, Irving's net obligation to Hett was $4,613.53.

**15.** *Western Airlines, Inc. v. Lathrop Company,* 535 P.2d 1209 (Alaska 1975); *Grasle*

*Electric Company v. Clark,* 525 P.2d 1081 (Alaska 1974); *Palfy v. Rice,* 473 P.2d 606 (Alaska 1970).

**16.** *See Malvo v. J. C. Penney Co., Inc.,* 512 P.2d 575 (Alaska 1973).