Walter ELISOVSKY, Appellant

v.

STATE of Alaska, Appellee.

In re John SUDDOCK.

Nos. 3440, 3467.

Supreme Court of Alaska.

March 30, 1979.

---

Sue Ellen Tatter, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

Walter Elisovsky appeals his conviction of the crime of assault with a dangerous weapon in violation of AS 11.15.220. Issues are raised pertaining to the failure of the trial court to give a lesser included offense instruction as to careless use of a firearm; the jurors making an unauthorized inspection of the scene of the offense; an instruction authorizing jurors to use their past experience in considering the evidence and the fact that jurors decided to consider prior bad conduct of the defendant which the court had excluded; the excessiveness of

the sentence;[1] and the imposition of a fine of $100.00 on defense counsel for securing affidavits from jurors and not promptly notifying the court.[2]

Subsequent to the trial of this case, we ruled that a requested lesser included offense instruction of careless use of a firearm is required under circumstances similar to those involved in this case. That rule, which we find applicable to this case, is dispositive of Elisovsky's appeal. The failure to give the instruction requires a reversal and remand. Since the other instruction issue may arise on retrial, it will be discussed, as will the separate appeal of attorney Suddock from the imposition of a sanction. We regard the remaining issues as moot.[3]

## STATEMENT OF FACTS

On September 14, 1976, Walter and Jackie Elisovsky went out for the evening in Cordova to celebrate their wedding anniversary. After a period of celebration, the Elisovsky couple had an argument over the control of the car keys.[4] When Elisovsky refused to give the car keys to his wife, she telephoned the Cordova police. As the police arrived, Elisovsky was taking his rifle and gear out of the rear of the couple's station wagon. Both police officers testified that Walter pointed the rifle at them and that Jackie pushed the muzzle of the gun to the ground. Elisovsky testified that he was taking the rifle and other gear out of the car for the purpose of spending the night on a friend's boat and was merely planning to stand the rifle beside the car. Jackie testified that she had grabbed the barrel of the rifle to push it down, but believed that Elisovsky was only brandishing the gun and had not pointed it at anyone. Elisovsky was charged with assault with a dangerous weapon.[5]

At trial, the court refused to give a requested instruction that careless use of a firearm[6] was a lesser included offense of

---

1. Elisovsky was sentenced to four years imprisonment.

2. Counsel John Suddock's appeal from the sanction has been consolidated with Elisovsky's appeal.

3. The state does not seriously question that the bailiff permitting the jurors to take an unauthorized view of the scene, at which they attempted to recreate the occurrence, was error. The only real issue is whether such error was harmless. *See Parker v. Gladden*, 385 U.S. 363, 365, 87 S.Ct. 468, 470, 17 L.Ed.2d 420, 423 (1966) (per curiam). The *Parker* holding implicitly rejects Lord Mansfield's rule that a juror will not be heard to impeach his own verdict. *Vaise v. Delaval*, 1 T.R. 11, 99 Eng.Rep. 944 (K.B.1785). *See also Wright v. Illinois and Mississippi Telegraph Co.*, 20 Iowa 195 (1866). Several courts have found that unauthorized views of the scene of the crime by even one juror necessarily constitute prejudice sufficient for a new trial. *Watkins v. State*, 237 Ga. 678, 229 S.E.2d 465, 470 (1976); *People v. Hollingsworth*, 22 Mich.App. 545, 177 N.W.2d 687, 688–89 (1970); *People v. De Lucia*, 20 N.Y.2d 275, 280, 282 N.Y.S.2d 526, 530, 229 N.E.2d 211, 214 (N.Y.1967) ("[T]hese jurors became unsworn witnesses against the defendants in direct contravention of their rights, under the Sixth Amendment, 'to be confronted with witnesses' against them"). *See also Commonwealth v. Price*, 463 Pa. 200, 344 A.2d 493, 494 (1975). Several cases have found juror misconduct

harmless beyond a reasonable doubt under the standard set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967). *See Dyer v. State*, 342 N.E.2d 671, 674 (Ind.App.1976); *State v. Little*, 164 N.W.2d 81, 83 (Iowa 1969); *State v. Arney*, 218 Kan. 369, 544 P.2d 334, 338 (Kan.1975). *Cf. Burford v. State*, 515 P.2d 382, 383 (Alaska 1973) (per curiam) (applying *Chapman* harmless error doctrine to impeachment of defendant with invalid misdemeanor convictions).

4. Mrs. Elisovsky testified that she wanted to leave to go home because she had to rise early for work the next morning and that she wanted to drive because her husband had previously wrecked one of the couple's automobiles.

5. AS 11.15.220 provides:

 *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment for not more than 10 years nor less than six months, or by a fine of not more than $1,000 nor less than $100, or by both.

6. AS 11.15.200 provides:

 *Careless use of firearms.* (a) A person who intentionally, and without malice, points or aims a firearm at or toward a person, or discharges a firearm so pointed or aimed at a person, or points and discharges a firearm at or toward a person or object without know-

the charged crime. The court also instructed, over defense objection, that:

> When you think about the evidence in this case and discuss in in the jury room you do not have to set aside the things you have seen and experienced in the affairs of life but you do in fact have a right to consider all the evidence in the light of things you have seen and experienced.

Defense counsel had objected on the grounds that, in a small community such as Cordova, such an instruction authorized the use of extrinsic evidence. Elisovsky's prior convictions of possession of marijuana, driving while intoxicated and disorderly conduct were covered by a protective order; similarly, a prior suicide attempt on Elisovsky's part and an acquittal on a fishing violation were not to be used. No informa-

tion on any of these incidents was presented to the jury during the trial.

The jury returned a verdict of guilty of assault with a dangerous weapon on December 10, 1976. The court after the verdict authorized the jurors to speak about their deliberations should they be approached by one of the attorneys.[7] Rodger James, one of the jurors, encountered defense counsel John Suddock at a Cordova hotel on Saturday the day after the verdict was received, and invited Suddock over to his table. The following day, Suddock contacted Arlot Hall, the jury foreman, and juror Dennis Bain. From these conversations, Suddock learned that the jurors had made an unauthorized trip to the scene of the incident and had also made a formal decision to discuss events in Walter's history which were not introduced into evidence.

Suddock prepared affidavits relating to this information[8] and submitted them on

---

ing the identity of the object and maims or injures a human being, is guilty of the careless use of firearms, and upon conviction is punishable by a fine of not more than $1,000, or imprisonment for not more than one year, or by both. If an offense specified in this section was committed by a person licensed to hunt and was committed while he was hunting, upon conviction, the court shall, in addition to the penalty imposed in this section, revoke the person's hunting license. A person whose license has been revoked may not purchase another hunting license of any class for a period of not less than one year nor more than 10 years from the date of revocation as determined by the court. If an offense specified in this section was committed by a person not licensed to hunt and was committed while he was hunting, the court shall, in addition to the penalty imposed in this section, prohibit the person from purchasing any class hunting license for a period of not less than one year nor more than 10 years as determined by the court.

(b) If death ensues from the maiming or injuring, the person discharging the firearm may, in the discretion of the prosecuting officer or grand jury, be charged with the crime of manslaughter.

(c) This section does not apply to a case where firearms are used in self-defense or in the discharge of official duty, or in [the] case of a justifiable homicide.

7. The judge stated:
Lawyers who practice in courts before juries very often find it helpful, or think they find it helpful at least, to speak to the jurors after a case is over, to find out perhaps how their

style affects the jury, how their witnesses affect the jury—things that might help them become better trial lawyers. If you wish—you are not required to, but if you wish, and if you are approached by either of these gentlemen, you are authorized to speak to them about the case and how their presentation might have affected you, or things of this nature—questions to educate them, to help them sharpen their skills if they wish to do that. As I say, you're not required to do that; you may do that—you may respond to their questions if you wish. They are not authorized to talk to you about what went on in the jury room—in other words, to inquire into your deliberative process. . . . [I]f you—if these gentlemen do ask to speak to you and you do decide to speak to them, you must be very careful to speak accurately and not say anything which would tend to impeach your verdict, that is to say, raise some question. You all decided tonight, now. It might even be—you know, tomorrow or the next day, if somebody were to talk to you, you might have a kind of a different slant from what you had tonight. And you—I caution you, if you do talk to counsel, that you must be cautious, I think, not to say anything that would give rise to a suggestion that your verdict would be impeached—because that would be improper for them to question you in that area.

8. Dennis Bain's affidavit indicated that the jury requested the bailiff to take them to the scene of the incident and that, upon arriving at the Alaskan Bar, some jurors attempted to recreate the scene. Also, Bain indicated that after con-

December 23, 1976, along with a motion for a new trial. A hearing was held on the motion for a new trial, and ten of the twelve jurors appeared at the request of the court. They were collectively asked a series of questions.[9] The motion for a new trial was denied.

On March 3, 1977, the state filed a motion to censure defense counsel for securing juror affidavits "for the purpose of impeaching the jury's verdict in this case." A hearing was held in Anchorage on May 4, 1977, at which the court told Suddock:

I find that your failure [to notify the court immediately upon finding information of apparently improper jury conduct] but to go ahead and secure affidavits— and secure them in support of a motion for a new trial, and not to apply to the court for its assistance and its supervision in the jury-inquiry process is improper.

The court imposed a fine of $100.00, staying the execution pending appeal. Suddock objected that he had had no notice that he was "defending [his] pocketbook as well." He has appealed the imposition of the fine.

### LESSER INCLUDED OFFENSE

Elisovsky's attorney made a timely request for a lesser included offense instruction on careless use of a firearm, AS 11.15.-200. The request was denied by the court.

The general common law definition of lesser included offenses was articulated in *Giles v. United States*, 144 F.2d 860, 861 (9th Cir. 1944):

sidering Instruction No. 2, "our decision was that under that instruction, those of us with knowledge about Walter could give the information to the other jurors, and that we had the right to consider such information in deciding the case, and did not have to set it aside." Bain also swore that the jury discussed the fact that Walter had recently attempted suicide by stabbing himself, and that one juror told the group that he had seen Jackie Elisovsky after she had been beaten up, presumably by her husband.

Rodger James' and Arlot Hall's affidavits were of generally similar content.

9. When asked to respond in writing, nine jurors wrote down that they had not considered general character information in reaching their

"To be necessarily included in the greater offense the lesser must be such that it is impossible to commit the greater without first having committed the lesser.[10]"

Alaska's rule on lesser included offenses parallels the requirements of the common law. Criminal Rule 31(c) provides:

*Conviction of Lesser Offense.* The defendant may be found guilty of an offense necessarily included in the offense charged, or of an attempt to commit either the offense charged or the offense necessarily included therein if the attempt is an offense. When it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only.[11]

Two theories have developed defining when an offense is "necessarily included" in another offense. Under the "statutory elements" analysis, if it is possible to commit the greater offense under the statute without first having committed the lesser offense, an instruction on the lesser offense is not required. Under that theory, the offense of assault with a dangerous weapon could be committed with the use of weapons other than a firearm. Thus, the elements of careless use of a firearm would not necessarily be included in all of the means by which assault with a dangerous weapon could be committed. We note, however, that Criminal Rule 31(c) refers to "the offense charged," not the statute under which the offense is charged.

verdict. All ten of the jurors present indicated that the verdict would have been the same without any discussion of character. All ten also indicated that the unauthorized jury view of the scene of the incident did not cause them to disregard evidence presented, and that to a "reasonable certainty," there would not have been a different verdict without the jury view. Suddock objected to the questions as leading and also objected that all of the jurors were not present. Jury Foreman Arlot Hall was not present.

10. *Quoting House v. State*, 186 Ind. 593, 117 N.E. 647, 648 (1917).

11. *See also* Fed.R.Crim.P., Rule 31(c).

The judicial constructions which have attempted to remedy the defects of the statutory approach have come to be called the "cognate approach." [12] This approach focuses closely on the facts charged in the indictment to determine whether the defendant had actual notice of possible lesser included offenses.[13] At least one court has found the cognate approach "[a] more natural, realistic and sound interpretation of 'lesser included offense,' " [14] where the statutory analysis is found to be inadequate.

Of course, when the statutory offense necessarily includes all the elements of the lesser offense, the distinction does not arise. There has been some confusion in Alaska cases, however, as to which approach should apply. Of the three cases on the subject decided between 1964 and 1973, two employ the statutory approach,[15] and one adopts the test of sufficient notice in the indictment characteristic of the cognate approach.[16] Only in *Mahle v. State*, 392 P.2d 19 (Alaska 1964), was a lesser included offense instruction refused under the statutory approach and it was not followed in *State v. Spencer*, 514 P.2d 14 (Alaska 1973), which, in principle, seems to have used the cognate approach. In *Christie v. State*, 580 P.2d 310 (Alaska 1978), a case involving a similar issue to that presented by Elisovsky, we held that a defendant charged with shooting with intent to kill was entitled to an instruction not only on assault with a dangerous weapon, but also careless use of a firearm, when there was evidence presented from which a jury could have found him to be guilty of the latter offense. In fairness to the trial court, it must be pointed out that the decision in *Christie* was handed down subsequent to the time when Elisovsky's case went to the jury.

■ In the present case, there is a conflict in the testimony as to whether Elisovsky ever intentionally pointed the weapon at any person. The officers testified that he pointed the rifle directly at them. Elisovsky testified that he was taking the rifle, along with his other gear, out of the car in order to spend the night on a friend's boat, that he intended to point the gun at no one but merely wanted to stand it up alongside the car. Jackie's version was that the muzzle of the gun was raised slightly and that she pushed the muzzle to the ground. From this conflicting evidence the jury could have believed that the rifle was intentionally pointed at the troopers without malice.

Evidence was thus presented that the defendant committed only the lesser offense of careless use of a firearm. In addition, the indictment charging assault with a dangerous weapon was sufficient to notice the crime of careless use of a firearm. Under *Christie*, it was error for the court to have refused the instruction.

## INSTRUCTION OF JURORS TO USE PAST EXPERIENCE

■ As part of Instruction 2, the jury was told:

When you think about the evidence in this case and discuss it in the jury room you do not have to set aside the things you have seen and experienced in the affairs of life but you do in fact have a right to consider all the evidence in the light of things you have seen and experienced.[17]

12. *See Paterno v. Lyons*, 334 U.S. 314, 320–22, 68 S.Ct. 1044, 92 L.Ed. 1409, 1415 (1948) (attempted grand larceny included in offense of receiving stolen property); Barnett, *The Lesser-Included Offense Doctrine: A Present Day Analysis for Practitioners*, 5 Conn.L.Rev. 255 (1972).

13. *See Paterno v. Lyons*, 334 U.S. at 320–21, 68 S.Ct. 1044, 92 L.Ed. at 1415.

14. *United States v. Whitaker*, 145 U.S.App.D.C. 343, 447 F.2d 314, 319 (1971).

15. *Jennings v. State*, 404 P.2d 652, 655 (Alaska 1965); *Mahle v. State*, 392 P.2d 19, 20–21 (Alaska 1964).

16. *State v. Spencer*, 514 P.2d 14, 16 (Alaska 1973).

17. The instruction in its entirety read:
Faithful performance by you of your duties is very necessary to your doing justice.
The law which applies to this case is stated in these instructions and it is your duty to follow them. You must consider these in-

Elisovsky objected to the instruction on the ground that it would encourage the jurors who lived in a small community where most people knew him to consider rumors and prior conduct which had been excluded from evidence. The jurors' affidavits indicated that they did consider the extrinsic evidence.

The instruction, when read in its entirety, seems to make it clear that the facts are to be determined by the evidence produced in open court. Nevertheless, the portion of the instruction to which objection was made could create some confusion in the minds of the jurors. Moreover, telling jurors that they need not set aside the things they have seen and experienced in the affairs of life seems unnecessary. In view of the possibility of the questioned portion of the instruction being misunderstood, it should not be given upon retrial of this case.

## THE FINE IMPOSED ON COUNSEL

■ The state filed a motion requesting censure of defense counsel and disapproval of his actions in securing affidavits for the purpose of impeaching the jury's verdict in this case. At the hearing, the court found Mr. Suddock's failure immediately to in-

form the court of the jurors' alleged improper conduct and his decision to secure affidavits without applying to the court for its assistance and supervision to be improper. This was the apparent basis for the imposition of the fine of $100.00.

But Mr. Suddock was not given notice that he was being subjected to a possible fine for failing promptly to inform the court of the jurors' alleged misconduct. The state's motion to censure referred to the securing of the affidavits, not the failure promptly to report juror misconduct. We believe that this circumstance violated Mr. Suddock's right to be informed of the specific charges against him and his right to prepare a response to such charges.

The court did not specify the source of its power in imposing the fine. Conceivably, the proceeding could have been in the nature of contempt, for conduct occurring outside the presence of the court. Civil Rule 90(b) establishes the procedure to be followed for such instances.[18]

Civil Rule 95(b) authorizes the imposition of a fine, not to exceed $500.00, for failure to comply with any rules promulgated by the supreme court. In *Davis v. Superior Court*, 580 P.2d 1176, 1179 (Alaska 1978), we

structions as a whole, and you may not . . pick out one instruction and then pay no attention to the other instructions.

It is your duty to determine the facts, and to determine them from the evidence produced in open court. You are to apply the law to the facts and in this way decide the case.

The evidence which you are to consider consists of testimony of the witnesses and the exhibits offered and admitted into evidence. The production of evidence in court is governed by rules of law. From time to time it has been my duty as judge to rule whether evidence may be admitted. You must not concern yourselves with reasons for these rulings. And you are not to consider testimony or exhibits when I have sustained an objection to that evidence.

Neither by these instructions nor any ruling or remark which I have made do I or have I meant to indicate any opinion as to the facts.

In determining whether anything that has to be proven, has been proven, you should consider all of the evidence that has anything to do with that question without regard to which party produced it.

When you think about the evidence in this case and discuss it in the jury room you do not have to set aside the things you have seen and experienced in the affairs of life but you do in fact have a right to consider all the evidence in the light of things you have seen and experienced.

18. Civil Rule 90(b) states:

*Other Contempts—Proceedings—Parties.* For every contempt other than that specified in subdivision (a) of this rule, upon a proper showing on ex parte motion supported by affidavits, the court shall either order the accused party to show cause at some reasonable time, to be therein specified, why he should not be punished for the alleged contempt, or shall issue a bench warrant for the arrest of such party. Such proceeding may be commenced and prosecuted in the same action or in an independent proceeding either by the state, or by the aggrieved party whose right or remedy in an action has been defeated or prejudiced or who has suffered a loss or injury by the act constituting a contempt.

held that the trial court has the power to impose fines under this section for a violation of the disciplinary rules when necessary for the orderly and efficient operation of the courtroom. Alaska Bar Rule 11 specifies that acts or omissions by an attorney which violate the Code of Professional Responsibility of the American Bar Association shall constitute misconduct and grounds for discipline.

■ Disciplinary Rule 7–108(G) of the Code of Professional Responsibility requires that:

> A lawyer shall reveal promptly to the court improper conduct by a venireman or a juror, or by another toward a venireman or a juror or a member of his family, of which the lawyer has knowledge.[19]

Obviously, immediate notice is required of knowledge of such improper conduct learned during the course of trial. "Promptly" is a flexible term and we do not express an opinion as to the time for presenting such information learned after a trial, except to state that reasonable diligence is required.

Under either Civil Rule 90(b) or 95(b), notice and an opportunity to be heard are required. These requirements have been explicated in three cases decided subsequent to the imposition of Mr. Suddock's fine. *See Davis v. Superior Court*, 580 P.2d at 1179, 1180; *Esch v. Superior Court*, 577 P.2d 1039, 1043 (Alaska 1978); *Weaver v. Superior Court*, 572 P.2d 425, 429–30 (Alaska 1977). Here no adequate notice was given to Mr. Suddock that he might be subject to a fine for failure promptly to reveal improper conduct by jurors.

We therefore must reverse the order imposing a fine of $100.00 on Mr. Suddock and remand for further hearing on proper notice to be conducted in the discretion of the trial court. On remand, the trial court may determine whether Mr. Suddock failed to report promptly to the court improper juror conduct and whether such failure, in the circumstances of this case, would be grounds for imposing disciplinary sanctions.

■ Since a new proceeding might again involve the issue of conferring with jurors, we note that it would be improper to sanction Mr. Suddock for talking to the jurors in the absence of a showing that he harassed them. The court specifically authorized jurors to talk to counsel. The American Bar Association Ethical Considerations permit such communications.[20] Disciplinary Rule 7–108(D) of the Code of Professional Responsibility provides:

> After discharge of the jury from further consideration of a case with which the lawyer was connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service.

In *Irving v. Bullock*, 549 P.2d 1184, 1188 n.10, we stated in part:

> However, interrogation of jurors for the purpose of discovering "errors" which are not grounds for impeaching the verdict deprives jurors of the protection from harassment which the rule seeks to give them. See Code of Professional Responsibility, DR 7–108, EC 7–29, 7–31. The Ninth Circuit Court of Appeals has declared it unethical even to interview jurors about the course of their deliberations. *Northern Pacific Railway v. Mely*, 219 F.2d 199, 202 (9th Cir. 1954). Henceforth, an attorney wishing to obtain evidence concerning the behavior of jurors in the performance of their duty should first file a motion in the trial court for

---

**19.** In addition, Ethical Consideration 7–29 provides in part:

> After the trial, communication by a lawyer with jurors is permitted so long as he refrains from asking questions or making comments that tend to harass or embarrass the juror or to influence actions of the juror in future cases. Were a lawyer to be prohibited from communicating after trial with a juror, he could not ascertain if the verdict might be subject to legal challenge, in which event the invalidity of a verdict might go undetected. When an extrajudicial communication by a lawyer with a juror is permitted by law, it should be made considerately and with deference to the personal feelings of the juror.

**20.** *See* note 19, *supra*.

leave to do so, stating in detail the reasons therefore [sic]. The trial court shall weigh such applications with great care, granting leave to make such an inquiry only where it appears that there is a strong likelihood that an obstruction of justice may have occurred. If the motion is granted, the court shall specify the manner in which such evidence to be [sic] obtained.

We now find that the *Irving* directive requires some modification. As indicated in the American Bar Association Ethical Consideration 7–29:

> Were a lawyer to be prohibited from communicating after trial with a juror, he could not ascertain if the verdict might be subject to legal challenge, in which event the invalidity of a verdict might go undetected.

The proposed Alaska Rule of Evidence 606(b), which is similar to the like numbered Federal Rule of Evidence, provides:

> (b) *Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

■ We approve of the proposed rule and believe that it sets forth the proper standard for determining permissible inquiry into jury conduct. Inquiry should not be made into subjects about which a juror may not testify. This standard may also be used in part in ascertaining whether inquiries of jurors exceed the authorized contacts so as to constitute harassment.

■ The securing of affidavits from jurors after inquiry presents a more delicate problem. If the attorney wishes to secure affidavits, he may do so without filing a formal motion before the court, but the affidavits must not exceed the permissible scope of inquiry under proposed Alaska Rule of Evidence 606(b).[21] Again, the standard delineated therein may be used to determine if the attorney's conduct in securing jurors' affidavits amounts to harassment.

To summarize, we are no longer requiring that before counsel can make inquiry of jurors, an order must be obtained. Counsel are generally authorized to make inquiry within the contours set forth in proposed Alaska Rule of Evidence 606(b). In the event counsel discovers alleged juror misconduct, he must promptly reveal this information to the trial court. In the event counsel wishes to secure an affidavit from a juror, he may do so without prior court order subject to the limitations of Rule 606(b). The court, however, may, on its own motion, after being informed of alleged prior misconduct, regulate the manner in which evidence is to be obtained.

REVERSED AND REMANDED.

CONNOR, J., concurring in part, dissenting in part.

CONNOR, Justice, concurring in part, dissenting in part.

I agree with the majority opinion except for the holding as to a portion of Jury Instruction No. 2.

I regard the instruction as innocuous. If the jury did consider extrinsic evidence, I do not think that it can be attributed to this instruction. The instruction merely tells them to evaluate the evidence in terms of their real life experience. In effect, it

---

**21.** After being informed of the alleged juror misconduct, the court may, upon its own motion, regulate the manner in which evidence is to be obtained.

means that they need not leave the sphere of real life, and their experience of living in it, at the door of the juryroom. When this language is read with the instruction as a whole, and with the other instructions, I perceive no error.