**COMMONWEALTH of Pennsylvania,
Appellee**

**v.**

**Henry POPE, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 25, 2009.

Filed Feb. 10, 2011.

Victor Rauch, Public Defender, Philadelphia, for appellant.

Karen B. Jordan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., GANTMAN and DONOHUE, JJ.

OPINION BY DONOHUE, J.:

Henry Pope ("Pope") appeals from the judgment of sentence entered in the Court of Common Pleas, Philadelphia County, on October 21, 2009. We affirm.

Pope was charged with three counts of attempted theft, three counts of robbery causing serious bodily injury, and three

counts of robbery causing bodily injury.[1] The evidence presented at trial was summarized by the trial court as follows:

Ms. Jessica Cunningham testified that at approximately 9:20 p.m. on the evening of February 7, 2009, she and two friends, Ms. Kristin Rhodes and Ms. Angela Lingo, were proceeding south on 43rd Street between Market and Ludlow Streets in the City of Philadelphia, when Ms. Lingo warned her that someone was approaching. She testified that 'I looked back and I saw like a man, you know, with his arms and I just got punched in the face to the ground and I fell on[to] my purse.' After getting to her feet she saw [Pope] 'struggling with Angela, he had her purse and she had her purse and they were fighting. And he was kicking and punching anything he could, I got kicked and punched and I saw him hurting Angela.' After the initial assault, Ms. Cunningham managed to cross the street and further observed that Ms. Lingo engaged 'in a tug of war with the bag' with [Pope] who was cursing at her. Finally she 'saw him with the bag take it, you know, run north on 43rd and Angela ran after him.'

Ms. Cunningham was injured as a result of this attack but did not seek medical attention. She described her injuries as being a direct result of [Pope's] conduct including her leg being 'scraped up and bleeding' and her 'arm was severely bruised and beat up.'

Ms. Cunningham testified that at the place of [Pope's] attack there was a street light which enabled her to clearly identify [Pope]. She also testified that although there was a tree in the vicinity, it had no leaves and did not impede her view of [Pope].

In addition to describing the area as a 'normal city block,' Ms. Cunningham also drew a diagram of the area of the attack. She clearly indicated her direction of travel, the point of attack and the direction in which [Pope] fled after the attack.

Ms. Angela Lingo's testimony corroborated that of Ms. Cunningham. Ms. Lingo testified that on February 7, 2009, she was walking south on 43rd Street near the intersection of 43rd and Market Streets in the City of Philadelphia with her friends Kristin Rhodes and Jessica Cunningham. When she turned her head to talk to her friends, she noticed [Pope] running toward them at which point she told her friends to 'watch out, let this guy go through.' 'The next thing I know he caught up to us and spread his arms wide open and tackled us to the ground.'

While they were still on the ground, [Pope] was cursing at Ms. Lingo, pulling at her pocket book and punching at her. She testified that after losing her grip on her bag, 'I stood up, I went after him.' [Pope] then proceeded back towards Market Street at a fast walking pace. When she caught up to him, after crossing Market Street, she spotted a police car at the intersection and cried out for help. The police responded immediately and arrested [Pope] in her presence. Ms. Lingo testified that after [Pope's] arrest, she and a police officer searched for her purse and discovered it in the sleeve of the jacket discarded by [Pope].

Ms. Lingo testified that during the attack [Pope] was swinging at her, hitting her several times. Although she did not seek medical attention, she testified that she suffered a large lump on her head, and a sore nose; she had a lump on her knee; and her hands were cut from

---

1. 18 Pa.C.S.A. §§ 901(a), 3921(a), 3701(a)(i), (iv).

glass broken on the pavement as a result of the attack.

Ms. Kristin Rhodes testified that [Pope] pulled her, Ms. Jessica Cunningham and Ms. Angela Lingo to the ground. While on the ground, [Pope] punched Ms. Rhodes in the face and grabbed hold of her purse. Eventually, [Pope] released his hold on Ms. Rhodes' purse and 'ran down the street.'

By agreement, counsel stipulated to the testimony of Police Officer Maxine Carson as contained in her police report of the incident. It was stipulated that if Officer Carson were to testify, she would have testified that Ms. Angela Lingo reported to her on February 9, 2009 that an 'unknown black male attacked her from behind, threw her on the ground and grabbed her purse.' In addition, it was stipulated that Officer Carson would have further testified that she 'observed an unknown black male grab the above purse and started [sic] running west on Market Street into the apartments and was apprehended by Police Officer Carson. The black male was later identified as Henry Pope.' It was also stipulated that Officer Carson prepared another police report in which she states, 'Police observed [Pope] grab the complainant's purse at 43rd and Market Street, then started running west bound on Market and was apprehended by Police Officer Carson.'

Trial Court Opinion, 1/25/10, at 4–7 (footnotes and record citations omitted).

At the conclusion of testimony and closing arguments, the trial court provided instructions to the jury. Pope objected to various portions of the trial court's instructions, including the trial court's definition of reasonable doubt. The trial court overruled the objection.

The jury deliberated for a day-and-a-half. Pope was ultimately found guilty of one count of attempted theft (of Ms. Lingo) and two counts of robbery with bodily injury (of Ms. Lingo and Ms. Cunningham), and was acquitted of the remaining charges. Sentencing was initially set for October 6, 2009. On August 31, 2009, however, Pope filed a motion for a new trial based upon defense counsel's post-verdict conversation with a juror, wherein the juror indicated that she went to the scene of the crime at the end of the first day of deliberations. Argument on the motion was set for October 6, 2009 so that the trial court could determine "whether 'significant issues were raised at trial concerning the physical aspects of the area visited by the juror.'" Trial Court Order, 9/2/09 (quoting *Commonwealth v. Price*, 463 Pa. 200, 204, 344 A.2d 493, 494 (1975)).

On October 6, Pope argued that the layout of the scene was significant in this case because of the possibility of misidentification, and hypothesized that the juror was going to the scene to clarify questions she had regarding the victims' ability to identify the perpetrator. The prosecutor indicated that a juror (which may or may not have been the same juror) also revealed to him that she went past the scene. The juror did not indicate to the prosecutor that it was "a crucial thing," and related that some of the jurors lived near the scene of the crime, were familiar with the area, and passed by there often. N.T., 10/6/09, at 10. The trial court denied Pope's motion for a new trial.

Sentencing was continued to October 21, 2009, at which time Pope was sentenced to an aggregate term of four to twenty years of incarceration. This timely appeal followed, in which Pope raises the following issues for our review:

1. Did not the trial court err in charging the jury that they 'must' convict [Pope] if they believe he is guilty?

2. Did not the trial court err in denying the defense post-verdict motion for a new trial due to juror misconduct, when even the prosecution conceded that at least one juror had committed misconduct (by conducting [an] independent investigation during deliberations and informing the other jurors about it)?

Pope's Brief at 4.

Beginning with the first claim of error, our standard review for the trial court's jury instructions is well-settled:

When reviewing a challenge to a jury charge, we must examine the trial court's instruction in its entirety, against the background of all evidence presented, to determine whether error was committed. A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said.

*Commonwealth v. Grimes*, 982 A.2d 559, 564 (Pa.Super.2009) (citation omitted).

█ Pope argues that the second sentence of the following excerpt from the trial court's reasonable doubt instruction was erroneous: "If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does provide beyond a reasonable doubt that the Defendant is guilty, then your verdict **must** be guilty." N.T., 8/13/09, at 41 (emphasis added). Pope asserts that the Pennsylvania Standard Jury Instructions call for the word "should" not "must" when instructing the jury regarding its decision to convict a defendant, and that the instructions were formulated in this manner to account for the jury's abili-

ty to exercise lenity and its power to err deliberately. Pope's Brief at 9–13. In its written opinion, the trial court indicates that it used the words "should" and "must" interchangeably throughout its instruction. The trial court explains, based on dictionary definitions, that the two words are synonymous in this context, as "both words mandate action. Both words convey the same sense of obligation that is the cornerstone of the jury's duty when it determines whether or not a person is guilty of a crime beyond a reasonable doubt." Trial Court Opinion, 1/25/10, at 16. The trial court cites to the Federal Judicial Center's suggested jury instruction, which states: "If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you *must* find him guilty." *Id.* (emphasis supplied) (citation omitted).

The record supports the trial court's contention that it used "should" and "must" interchangeably throughout its reasonable doubt instruction. *Compare N.T.*, 8/13/09, at 41 ("[I]f the Commonwealth's evidence does prove beyond a reasonable doubt that the Defendant is guilty, then your verdict **must** be guilty.") (emphasis added), *with id.* at 44 ("If [the Commonwealth] meets that burden then the Defendant is no longer presumed innocent and you **should** find him guilty.") (emphasis added). Moreover, as noted by both the trial court and Pope, "should" is the past tense of the word "shall," which is synonymous with the word "must." WEBSTER'S II DICTIONARY 471, 652 (3d ed. 2005); Trial Court Opinion, 1/25/10, at 16; Pope's Brief at 11.

█ Furthermore, the trial court's position is supported by the June 2010 revisions made to the Pennsylvania Standard

Jury Instructions.[2] Although the suggested instructions previously used the word "should" when instructing a jury on its obligation to convict a defendant if the evidence proves his or her guilt beyond a reasonable doubt, this is no longer the case. In the amended version, the second alternative now provides, in relevant part, as follows: "If after this consideration, you find that the Commonwealth has convinced you that the defendant is guilty beyond a reasonable doubt, you **must** find [him] [her] guilty."[3] Pa. SSJI (Crim.) § 7.01(2nd)(9) (2010) (emphasis added).

Pope relies on the case of *Commonwealth v. Stegmaier*, 247 Pa.Super. 159, 371 A.2d 1376 (1977) in support of his position. Pope's Brief at 10, 12–13. That case, however, is entirely different from the case at bar. In *Stegmaier*, the trial court instructed the jury as follows: "Under the facts of the case, it would defy reason and it would be improper to return a verdict of guilty as to one of these offenses and not to all. So, your verdict will be guilty or not guilty as to all charges under the peculiar circumstances of this case." *Stegmaier*, 371 A.2d at 1377. On appeal, this Court found the instruction was erroneous, as the trial court "improperly usurped the function of the jury." *Id.* Quoting Judge Friendly, we explained:

> The very fact that the jury may have acquitted of one or more counts in a multicount indictment because of a [belief] that the counts on which it was convicted will provide sufficient punish-

ment ..., forbids allowing the acquittal to upset or even to affect the simultaneous conviction. [...] [A]llowing inconsistent verdicts in criminal trials runs the risk that an occasional conviction may have been the result of compromise. But the advantage of leaving the jury free to exercise its historic power of lenity has been correctly thought to outweigh that danger.

*Id.* at 1377–78 (quoting *United States v. Carbone*, 378 F.2d 420, 422 (2d Cir.1967)).

■ That is not the situation with which we are faced in the case at bar.[4] While the trial court did not instruct the jury of its ability to exercise lenity, the law is well-settled that no defendant is entitled to such an instruction. *See, e.g., Commonwealth v. Hart*, 388 Pa.Super. 484, 565 A.2d 1212 (1989) ("In no case will a defendant be entitled to a charge which invites the jury to return its verdict based upon mercy rather than fact. Similarly, counsel may not successfully object to a charge on the sole ground that it encourages the jury to return a verdict of guilty or not guilty that is based upon fact rather than mercy.") (citations omitted).

Viewing the instruction in its entirety, as our standard of review requires, we do not find that the trial court's instruction was inadequate, unclear, or tended to mislead or confuse the jury. *See Grimes*, 982 A.2d at 564. Therefore, no relief is due.

2. A trial court has broad discretion in phrasing its jury instructions and is not required to read the Standard Jury Instructions verbatim. *Commonwealth v. Porter*, 556 Pa. 301, 321, 728 A.2d 890, 899 (1999). Although our Supreme Court has not adopted the suggested instructions, they are considered to be an aid when evaluating a trial court's charge. *Id.*

3. The first alternative jury instruction continues to utilize the same language: "If [the

Commonwealth] meets that burden, then the defendant is no longer presumed innocent and you **should** find [him] [her] guilty." Pa. SSJI (Crim.) § 7.01(1st)(4) (emphasis added).

4. Inarguably, the verdict in the instant case was inconsistent—Pope was convicted of robbery causing bodily injury of Ms. Cunningham but was acquitted of attempted theft of the same victim. N.T., 8/14/09, at 34–35; *see* 18 Pa.C.S.A. §§ 901(a), 3921(a), 3701(a)(iv).

Pope's second issue on appeal is based upon the trial court's denial of his motion for a new trial. Pope's Brief at 13. He argues that a new trial is required because "at least one juror visited the scene of the crime during trial." *Id.*

Our standard of review for this issue is as follows:

> The refusal of a new trial on the grounds of alleged misconduct of a juror is largely within the discretion of the trial judge. When the facts surrounding the possible misconduct are in dispute, the trial judge should examine the various witnesses on the question, and his findings of fact will be sustained unless there is an abuse of discretion.

*Commonwealth v. Russell,* 445 Pa.Super. 510, 665 A.2d 1239, 1243 (1995).

There is no question that a juror is prohibited from making an unauthorized visit to the scene of the crime. *Price,* 463 Pa. at 202, 344 A.2d at 494. However, not every unauthorized visit by a juror requires the grant of a new trial. *See id.* at 203, 344 A.2d at 494. Once the trial court is made aware that a juror has been exposed to "extraneous information [ . . . ] that was not provided in open court or vocalized by the trial court via instructions" which may have affected the juror's deliberation, the trial court must assess the prejudicial effect of the extraneous influence. *Commonwealth v. Messersmith,* 860 A.2d 1078, 1085 (Pa.Super.2004). In so doing, the trial court should consider:

> (1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature.

*Id.* (quoting *Pratt v. St. Christopher's Hosp.,* 824 A.2d 299, 303 (Pa.Super.2003), *affirmed,* 581 Pa. 524, 866 A.2d 313 (2005); *Carter by Carter v. United States Steel Corporation,* 529 Pa. 409, 421–22, 604 A.2d 1010, 1017 (1992) (plurality)).

The trial court is not permitted to consider any evidence of the subjective impact the extraneous influence had on the juror. *Id.* "In order to determine whether an extraneous influence is prejudicial, a trial judge must determine how an objective, typical juror would be affected by such an influence." *Id.* (quoting *Carter,* 529 Pa. at 420, 604 A.2d at 1016). The burden of proving that the extraneous influence was prejudicial is on the moving party. *Id.* at 1086. "It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted." *Commonwealth v. Brown,* 567 Pa. 272, 292, 786 A.2d 961, 972 (2001).

Applying this test to the case at bar, the trial court found as follows:

> At the hearing on this [m]otion, counsel for [Pope] failed to present any facts regarding the physical aspects of the scene visited by the juror which may have prejudiced him. Instead, counsel offered only conjecture as to what the juror may have been thinking, simply arguing that the only issue she could identify was that of identification. Counsel stated: 'I would submit to the [c]ourt that the scene or what [the juror] was observing only goes to the juror had questions as to identification and was going to the scene to clarify. I cannot state further what impact that may have had on the juror.'

> \* \* \*

> [At trial,] Ms. Cunningham testified extensively regarding the scene, thus, giving the jurors a detailed description of the scene. She testified that, even

though it was dark, the lighting was adequate and the view of the scene was unobstructed. In addition to her verbal description, she also drew a diagram of the scene locating the positions of the various parties to the incident. In short, her description and diagram depicted a typical Philadelphia street scene with no unique characteristics.

Ms. Lingo testified that after [Pope] disengaged from the attack, she pursued [Pope] across Market Street until he was taken into custody by the police. It is clear from her testimony that she had a clear view of [Pope] up until the time of his arrest and that she had no trouble identifying [Pope]. As with the testimony of Ms. Cunningham, Ms. Lingo's description of the scene portrayed a typical Philadelphia street with no unique characteristics.

In the end, [Pope] was unable to establish even a *prima facia* [sic] set of circumstances that could reasonably establish that the scene of the attack was more than a collateral issue in this matter. There was no testimony that the scene had in any way been altered between the time of the incident and the unauthorized visit. In addition, [Pope] was unable to establish that the unauthorized visit could have provided the juror with information beyond that which the jury already possessed, as a result of the testimony at trial and their normal appreciation of a typical Philadelphia street. Finally, [Pope] didn't even attempt to address the issue as to whether or not the viewing of a typical Philadelphia street scene had an emotional or inflammatory influence on the juror.

Trial Court Opinion, 1/25/10, at 19–20.

Pope argues that this finding was in error, as he had no burden to prove that he was prejudiced by the juror going to the scene of the crime. Relying on our Supreme Court's holding in *Price*, Pope argues that "it cannot be said beyond a reasonable doubt that the unauthorized visit did not contribute to appellant's conviction," and thus prejudice must be presumed based upon the record before us. Pope's Brief at 16–17 (quoting *Price*, 463 Pa. at 205, 344 A.2d at 495). We disagree, however, because unlike in the case at bar, the physical aspects of scene of the crime were central to the disposition in *Price* and at the time the juror made the unauthorized visit, the crime scene had been substantially and materially changed. *Price*, 463 Pa. at 204–05, 344 A.2d at 495.

In the case *sub judice*, the record reflects that the layout of the scene was not a central issue. As indicated by the trial court, testimony presented at trial indicates that the scene of the crime was nothing more than a typical Philadelphia street. N.T., 8/12/09, at 11, 14–15, 18–20, 66–67, 69. Although Pope cross-examined the witnesses and presented argument in his closing about the possibility of misidentification, it was unrelated to the physical aspects of the scene of the crime. *Id.* at 44–47, 83; N.T., 8/13/09 (closing arguments), at 9–15. Rather, his closing argument on the misidentification defense centered almost exclusively on police officers' failure to follow proper procedure and how dark it was at that time of the robbery. N.T., 8/13/09 (closing arguments), at 9–15. At the subsequent argument on his motion for a new trial, Pope presented no facts or evidence before the trial court that the unauthorized visit to the scene of the crime provided the juror with information she did not have before her at trial or that the visit was emotional or inflammatory.

Pope further argues that the trial court erred by failing to call the juror to testify regarding her visit to the scene of the crime. Pope's Brief at 14. However,

because Pope failed to show that he was prejudiced by the extraneous influence, he was not entitled to an evidentiary hearing on this issue. *See Messersmith,* 860 A.2d at 1086 (stating that a defendant is not entitled to question a juror in the hopes of proving prejudice).

■ Moreover, the law is clear that a juror cannot testify regarding what transpired during deliberations or regarding his or her own subjective reasoning process. *Id.* at 1084–85; Pa.R.E. 606(b). This is commonly known as the "no impeachment rule." *Id.* at 1085. An exception to the "no impeachment rule" exists, allowing a juror to testify "only as to the existence of the outside influence, but not as to the effect this outside influence may have had on deliberations." *Id.; see also* Pa.R.E. 606(b), Comment ("Note that when jurors are permitted to testify about facts not of record and outside influences, they may not be questioned about the effect upon them of what was improperly brought to their attention."). This exception provides no relief for Pope, since the outside influence at issue (*i.e.,* one or more jurors visited the scene of the crime) is not in question. *See N.T.,* 10/6/09, at 6, 10.

Judgment of sentence affirmed.

GANTMAN, J., concurs in the result.