J-E01005-14

2014 PA Super 221

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT MICHAEL PUGH | |
| Appellant | No. 343 EDA 2012 |

Appeal from the Judgment of Sentence December 19, 2011
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000303-2010

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA, J., DONOHUE, J., ALLEN, J., LAZARUS, J., MUNDY, J., and OLSON, J.

OPINION BY PANELLA, J.                    **FILED OCTOBER 07, 2014**

The primary issue before us is the admissibility of expert testimony proffered by the defense in order to question the trustworthiness of a defendant's confession. The trial court granted the Commonwealth's motion *in limine* to preclude the defense from presenting such evidence. In light of recent Pennsylvania Supreme Court case law, we conclude that expert testimony regarding false confessions is impermissible as it provides no pedagogical purpose and interferes with the jury's exclusive duty to assess

the credibility of witnesses. We also find Pugh's other issues merit no relief. Accordingly, we affirm.

On January 21, 2010, Pugh's sister, S.P., was taken to Pocono Medical Center, where she was diagnosed with a sexually transmitted disease ("STD"). S.P. was 13 years-old at the time. Because of her age and diagnosis, the hospital reported the incident to authorities.

In response, Trooper Patrick Finn of the Pennsylvania State Police interviewed S.P., at which time she stated that Pugh had drugged and raped her. Several days later, Trooper Finn contacted Pugh *via* telephone, and convinced Pugh to come to the police station to be interviewed. During his interview, Pugh admitted to, among other things, drugging and raping S.P. on multiple occasions. The interrogation and confession were not recorded, and Pugh was subsequently charged with several counts of rape and related offenses.

While incarcerated, Pugh soon recanted his confession, claiming that his confession had been coerced. Additionally, approximately one month after Pugh's arrest, his step-sister, M.Z., informed authorities that she had been diagnosed with the same STD as S.P. Ultimately, medical testing determined that Pugh was not suffering from this type of STD. M.Z. stated that she believed that she had contracted the disease from her husband. When presented with these circumstances, S.P. did not initially recant her accusations against Pugh; she stated that M.Z.'s husband had also assaulted

her. M.Z.'s husband subsequently pled guilty to statutory sexual assault and unlawful contact with a minor pursuant to S.P.'s allegations.

Approximately one month thereafter, S.P. wrote a letter to authorities, recanting her allegations against Pugh. Two months later, S.P. underwent a third interview with the Pennsylvania State Police. S.P. told the State Police that her mother and sister pressured her to recant her allegations against Pugh. Both women subsequently pled guilty to obstructing justice based upon their conduct towards S.P.

Pugh's first trial commenced on March 24, 2011. After the jury was unable to reach a verdict, the trial court declared a mistrial and scheduled a new trial. Before a new trial could be held, Pugh notified the Commonwealth that he intended to present expert testimony on the phenomenon of false confessions. The Commonwealth responded by filing a motion *in limine*, seeking to exclude, among other things, the expert's testimony on false confessions. Shortly thereafter, the Commonwealth supplemented its motion *in limine* seeking to exclude expert testimony regarding false confessions, and furthermore requested a **Frye**[1] hearing to determine the admissibility of such testimony.

The trial court held a **Frye** hearing and accepted supplemental briefing on the issue. On the eve of trial, the court entered an order that in relevant part granted the Commonwealth's motion *in limine*. At the conclusion of the

---

[1] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

3

second trial, the jury found Pugh guilty of rape of an unconscious victim,[2] rape of a substantially impaired person,[3] sexual assault,[4] unlawful contact with a minor (sexual offenses),[5] aggravated indecent assault without consent,[6] aggravated indecent assault (complainant is unconscious or unaware),[7] aggravated indecent assault (person impairs complainant),[8] and incest.[9] The trial court subsequently sentenced Pugh, who then appealed. In a memorandum decision, a panel of this Court affirmed the judgment of sentence and Pugh then applied for reargument *en banc*, which this Court granted.

We begin with Pugh's first issue raised on appeal. In evaluating the denial or grant of a motion *in limine,* our standard of review is the same as that utilized to analyze an evidentiary challenge. ***See Commonwealth v. Minich***, 4 A.3d 1063, 1068 (Pa. Super. 2010). Pursuant to that standard,

> [t]he admission of evidence is committed to the sound discretion
> of the trial court, and a trial court's ruling regarding the
> admission of evidence will not be disturbed on appeal unless that
> ruling reflects manifest unreasonableness, or partiality,
> prejudice, bias, or ill-will, or such lack of support to be clearly
> erroneous.

---

[2]  18 PA.CONS.STAT.ANN. § 3121(a)(3).
[3]  18 PA.CONS.STAT.ANN. § 3121(a)(4).
[4]  18 PA.CONS.STAT.ANN. § 3124.1.
[5]  18 PA.CONS.STAT.ANN. § 6318(a)(1).
[6]  18 PA.CONS.STAT.ANN. § 3125(a)(1).
[7]  18 PA.CONS.STAT.ANN. § 3125(a)(4).
[8]  18 PA.CONS.STAT.ANN. § 3125(a)(5).
[9]  18 PA.CONS.STAT.ANN. § 4302.

*Id*. (citations omitted). Admissibility of expert testimony on scientific knowledge is governed by Pennsylvania Rule of Evidence 702 which states:

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702.

There has been a long-standing policy in this Commonwealth of protecting the jury's prerogative to determine credibility from the undue influence that accompanies expert testimony on the subject of credibility of witnesses. **See**, **e.g.**, **Commonwealth v. Delbridge**, 855 A.2d 27, 42 (Pa. 2003) ("[E]xpert testimony will not be permitted when it attempts in any way to reach the issue of credibility, and thereby usurp the function of the factfinder."); **Commonwealth v. Dunkle**, 602 A.2d 830, 837 (Pa. 1992) (ruling expert testimony on the ability of children to recall events of abuse not admissible); **Commonwealth v. Gallager**, 547 A.2d 355 (Pa. 1988) (holding testimony regarding Rape Trauma Syndrome was not admissible); **Commonwealth v. Rounds**, 542 A.2d 997, 999 (Pa. 1988) (ruling expert testimony that victim was not dissembling was not admissible); **Commonwealth v. Seese**, 517 A.2d 920 (Pa. 1986) (finding expert testimony that pre-pubescent children do not fabricate stories of sexual abuse not admissible).

This Court has also consistently upheld the exclusion of expert evidence that intrudes upon the duty of the jury to determine credibility of witnesses. **See**, **e.g.**, **Commonwealth v. D.J.A.**, 800 A.2d 965, 975 (Pa. Super. 2002) (precluding testimony on credibility of child's testimony based upon suggestive interview technique). We have also affirmed trial court rulings that prohibited the introduction of expert testimony on the issue of false confessions. **See Commonwealth v. Harrell**, 65 A.3d 420, 429-431 (Pa. Super. 2013); **Commonwealth v. Szakal**, 50 A.3d 210, 228 (Pa. Super. 2012). Recently, our Supreme Court decided a case that directly dealt with admissibility as it pertains to experts who seek to testify about the phenomena of false confession.

The Supreme Court's recent decision, **Commonwealth v. Alicia**, 92 A.3d 753 (Pa. 2014), held that expert testimony on the phenomenon of false confessions would impermissibly invade the jury's exclusive role as the sole arbiter of credibility. In **Alicia**, the defendant was accused of murder and other related charges. The police questioned the defendant and he eventually confessed to the murder. Defendant later moved to use a false confession expert, citing his own low intelligence, mental health issues, and that his written confession contained a number of hallmarks which indicated his confession was false. The expert proffered by the defendant claimed, during an a hearing on the admissibility of his testimony, that he would testify generally about police interrogation methods that can put an innocent

suspect at risk and also about the specific ones used in defendant's case. The trial court held that the testimony was permissible as to the general aspects of police interrogation techniques, but prohibited the expert from providing any testimony as to the specific allegations in defendant's case. This Court, in a divided panel, affirmed the decision.

The Supreme Court of Pennsylvania, following the lead of the United States Court of Appeals for the Tenth Circuit in **United States v. Benally**, 541 F.3d 990 (10th Cir. 2008), reversed. The Court found that "expert testimony such as the proposed testimony of [the defense expert] Dr. Leo constitutes an impermissible invasion of the jury's role as the exclusive arbiter of credibility." **Alicia**, 92 A.3d at 764. First, the Court noted that regardless of whether an expert opined on whether the confession was true or false, the effect would be the same: jurors would be persuaded to disregard the confession and credit the defense's testimony that it was a lie. **See id**. Second, if the expert testimony were allowed, the Commonwealth would likely counter with its own rebuttal expert testimony, which would lead to befuddlement rather than serve to educate the jury. **See id**.

Ultimately, the Pennsylvania Supreme Court found that "the matter of whether Appellee's confession is false is best left to the jury's common sense and life experience, after proper development of relevant issues related to, among other things, the particular circumstances surrounding the

7

elicitation of his confession, using the traditional and time-honored techniques of cross-examination and argument." *Id*.

Instantly, there is no dispositive factual or legal basis with which to distinguish Pugh's claim from that of the recent Supreme Court decision in ***Alicia***. Accordingly, as we can find no distinguishable difference between the claim advanced by Pugh and the Supreme Court's decision in ***Alicia***, we must conclude that Pugh's claim warrants no relief.

Pugh next argues that the trial court erred in precluding from questioning M.Z.'s husband, Rocky Alverio, on issues such as her sexual history and S.P.'s motive to fabricate allegations against Pugh. The trial court states that it precluded this testimony based upon, among other things, the Pennsylvania Rape Shield statute. Pursuant to Pennsylvania's Rape Shield statute:

> Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.Cons.Stat.Ann. § 3104(a).

Specifically, Pugh explains as follows:

> The veracity of the complaining witness is the core issue in this case. Defendant wanted to call Rocky Alverio as a witness in his defense to challenge the accuser's veracity due to the accuser's sexual relationship with Alverio constituting the cause, by

8

motive, interest, or bias resulting in her false accusations against Robert Pugh.

Appellant's Brief at 41. Pugh contends that "[s]uch an inquiry will have probative value regarding veracity of the [victim] which is exculpatory to [Pugh]." *Id.*, at 42. We disagree.

In the present case, it is uncontested that at trial, Rocky Alverio was permitted to testify that he had engaged in sexual intercourse with S.P. Consequently, the jury was presented with ample evidence establishing that, at the medical center, S.P. falsely claimed to be a virgin. We agree with the trial court that any additional details regarding the sexual encounters between Rocky Alverio and S.P. were unnecessary and would have violated the Rape Shield statute. Therefore, we find no abuse of discretion in the trial court's limitation of Rocky Alverio's testimony.

Pugh next contends that the trial court erred in refusing to provide the jury with his proposed instruction on unrecorded custodial interrogations. We review a trial court's jury instruction as follows:

> When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

*Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted), *aff'd* 78 A.3d 1044 (Pa. 2013). "A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue." *Commonwealth v.*

***Pope***, 14 A.3d 139 (Pa. Super. 2011) (citation omitted), ***appeal denied***, 32 A.3d 1277 (Pa. 2011). "Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said." ***Id***.

Here, Pugh complains that he was prejudiced by the failure to instruct the jury that the ideal evidence regarding his confession was not available, despite the ability of the Commonwealth to provide for it, and therefore that the jury should consider this fact in determining credibility. The trial court states that it refused the proposed instructions because it had adequately covered the issue in other instructions. After reviewing the jury charge as a whole, we agree.

The trial court provided multiple instructions addressing Pugh's confession, the credibility of witnesses, and the consideration of evidence. Those instructions adequately addressed the concepts that Pugh sought to cover in the proposed instructions. We therefore conclude that the absence of these instructions did not prejudice Pugh. Accordingly, we find no abuse of discretion in the trial court's rejection of the proposed jury instructions addressing the absence of a video recording of Pugh's custodial interrogation.[10]

---

[10] Furthermore, we note that Pugh cites to no legal authority requiring instructions on the absence of recorded interrogations. Indeed, while acknowledging that recording such interrogations is not mandatory in Pennsylvania, Appellant invites us to create such a rule. Creation of such

In his final issue on appeal, Pugh argues that the trial court erred by failing to grant his motion for mistrial after the Commonwealth allegedly committed a **Brady**[11] violation. In **Brady**, the United States Supreme Court held that a defendant's due process rights are violated when the prosecution withholds favorable, material evidence from the defense. To prove a **Brady** violation, the defendant bears the burden of demonstrating that: "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant." **Commonwealth v. Koehler**, 36 A.3d 121, 133 (Pa. 2012) (citation omitted). Therefore, even if the first two prongs have been established, a defendant must establish that he was prejudiced by the failure to disclose. **See Commonwealth v. Appel**, 689 A.2d 891 (Pa. 1997). To establish prejudice, the defendant must prove that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Id**. (citation omitted).

Pugh asserts that the Commonwealth committed a **Brady** violation when the prosecution failed to turn over two pages of Pugh's medical testing results for STDs. Specifically, Pugh challenges the Commonwealth's failure to timely disclose all email correspondence regarding his STD testing and

---

rules and regulations, however, is a role reserved for the General Assembly, not the courts. Consequently, we decline Appellant's invitation.

[11] **Brady v. Maryland**, 373 U.S. 83 (1963).

results. The existence of the withheld correspondence was apparently revealed during examination of one of the Commonwealth's witnesses. That surprise revelation, according to Pugh, disrupted his defense strategy, entitling him to a mistrial.

The trial court states that it denied Pugh's motion for a mistrial because the alleged failure to disclose did not prejudice Pugh. *See* Trial Court Opinion, 3/13/2012, at 10-11. Significant to the trial court's analysis was the fact that the information set forth in the withheld documents was contained within a separate final report document that Appellant received from the Commonwealth in a timely manner. *See id*., at 10. Therefore, the trial court reasoned that Appellant was not prejudiced by the missing documents, as he had the relevant information all along. *See id*.

We find no error in the trial court's analysis. Indeed, even assuming that the Commonwealth should have disclosed the subject documents prior to trial, and accepting that the manner in which the documents were disclosed to Pugh was inconvenient, Pugh has not established that he suffered prejudice from the untimely disclosure. Consequently, we find no abuse of discretion in the trial court's denial of Appellant's motion for a mistrial, and conclude that Pugh's final issue on appeal merits no relief.

Judgment of sentence affirmed. Jurisdiction relinquished.

President Judge Gantman, President Judge Emeritus Ford Elliott, President Judge Emeritus Bender, and Judges Allen, Lazarus, and Mundy join the opinion.

Judge Olson files a concurring opinion in which Judge Donohue joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014