J-A20011-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO TREVELLE LANKO | : | |
| | : | |
| Appellant | : | No. 1671 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 26, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000022-2018

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    FILED NOVEMBER 13, 2020

Antonio Travelle Lanko appeals from the judgment of sentence of thirty-one to sixty-two years of imprisonment imposed after a jury convicted him of third-degree murder, receiving stolen property, possession of a firearm prohibited, firearms not to be carried without a license, and tampering with physical evidence.  We affirm.

The trial court offered the following summary of the facts underlying Appellant's convictions:

> On November 3, 2017, at approximately 12:57 p.m., the Uniontown branch of the Pennsylvania State Police received a call in reference to shots being fired in the area of the Bierer Wood Acres, specifically in the area known as MacArthur Terrace. Trooper Joshua Wiskeman and his partner, Trooper Daniel Biddle, were the responding officers.  Upon arrival at the scene, it was determined that a female victim was lying in the doorway of 86 Macarthur Terrace and was unresponsive.  Three individuals were standing around the victim.  One of these individuals was Appellant.  Troopers on the scene were informed the victim was suffering from a panic attack.  The Pennsylvania State Police

began conducting CPR on the victim. At the time, no gun shot wounds were immediately visible and there was no blood. Shortly thereafter, Emergency Medical Services arrived at the scene. Trooper Wiskeman and Trooper Biddle went upstairs where they located a Mr. Harris exiting from the shower. The Troopers instructed Mr. Harris to come downstairs and he complied. The Troopers then learned from the EMS personnel that there was a gunshot wound to the victim's back. Trooper Wiskeman contacted his supervisor to have additional patrol units dispatched to the scene to aid in the investigation. The crime unit was also dispatched to the scene.

Trooper Wiskeman began to question Mr. Harris and inquired as to why Mr. Harris had gone upstairs to take a shower, Mr. Harris responded that "[the victim] was all sweaty when we carried her in, and I had to take a shower". Trooper Wiskeman subsequently exited the apartment and began to secure the scene by roping off approximately a hundred yards of the crime scene which included the vehicle. The Troopers then began to question other individuals located in the same housing complex in which the incident took place.

Trooper Wiskeman testified that he observed Appellant acting in an emotional and confused state. When the Troopers questioned Appellant about what happened to the Victim, he would give a delayed response and then an excited reply, as though he had to think about his response. Appellant never informed Trooper Wiskeman that the victim had been shot. Trooper Wiskeman also testified that Uniontown Hospital is located next to the crime scene and is visible in some crime scene photographs. Appellant told Trooper Wiskeman that the victim was suffering a panic attack. Trooper Wiskeman did not learn that the victim had been shot until EMS had arrived and examined her sometime later.

Trooper Ed Burnworth arrived on scene after Troopers Wiskeman and Biddle. Trooper Burnworth spoke with Appellant. Appellant informed Trooper Burnworth that he and the victim had arrived at the scene together in the Jeep. Appellant also told Trooper Burnworth that as he and the victim were turning into the area of Bierer Wood Acres, they heard an audible "pop" sound.

Mr. Keith Lewis, a resident of Bierer Wood Acres, testified that he heard a gunshot on the afternoon of November 3, 2017

outside of his home. He immediately opened his window to look out. Mr. Lewis observed Appellant hand a gun to Mr. Robert Harris, who subsequently ran into his apartment with the same. Appellant then begins to drag the victim toward the Apartment. Appellant then hit the victim in her face four times. Appellant then, assisted by Mr. Harris and Ms. Jazmin Robinson, carr[ied the] victim to the Apartment belonging to Mr. Harris.

Appellant testified that he and the victim had driven to Bierer Wood Acres together on November 3, 2017 after consuming alcohol. Upon entering the complex, Appellant observed a man who had previously shot Appellant. Appellant became angry and proceeded to tell the victim to stop the vehicle. Appellant then testified he grabbed a gun from the victim's purse. After being persuaded by the victim not to shoot the man, Appellant testified that he was attempting to remove the bullet from the gun and the gun discharged. Appellant testified that the victim then slumped over and that he did not know if she was having a panic attack or if she had been shot. Appellant testified that he did not call 911, nor did he take the victim to the nearby hospital because he was panicking. Appellant also testified that his panicked state led him to give a false statement to the police.

Trial Court Opinion, 1/29/20, at 2-5 (citations and unnecessary capitalization omitted).

Upon this evidence, the jury convicted Appellant of the above-referenced crimes and, after ordering a presentence investigation report ("PSI"), the trial court imposed the aforementioned term of incarceration, which comprises statutory-maximum consecutive sentences for the convictions. Appellant filed a timely post-sentence motion contending that the aggregate sentence was excessive and unduly harsh to address his rehabilitative needs. The trial court denied Appellant's motion without a hearing.

Appellant filed a timely notice of appeal. The trial court ordered Appellant to file a concise statement of errors complained of pursuant to Pa.R.A.P. 1925(b), but Appellant did not comply. However, Appellant sought, and the trial court granted, leave to file his statement nunc pro tunc. The trial court subsequently authored an opinion addressing the issues raised therein, which are the issues Appellant asks this Court to review:

> [1.] Did the trial court err in denying Appellant's motion for a mistrial when a juror expressed to the other jurors that she believed appellant was guilty prior to the beginning of trial?
>
> [2.] Did the trial court err in denying Appellant's motion in limine to exclude statements the investigating officers made during the interrogation of appellant when the recording of the interrogation was played for the jury?
>
> [3.] Did the trial court err in denying Appellant's motion in limine to exclude statements made by a third party during multiple recorded telephone conversations with appellant that were played for the jury?
>
> [4.] Did the sentencing court impose a harsh, severe, and manifestly unreasonable and excessive sentence in light of the circumstances surrounding the alleged incident?

Appellant's brief at 7 (unnecessary capitalization omitted).

We begin with a review of the law applicable to Appellant's claim that juror misconduct warranted the grant of a mistrial. "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." Commonwealth v. Smith, 131 A.3d 467, 475 (Pa. 2015) (internal quotation marks omitted). "[T]he refusal of a new trial on grounds of alleged misconduct of a juror is largely within the discretion of

the trial judge. When the facts surrounding the possible misconduct are in dispute, the trial judge should examine the various witnesses on the question, and his findings of fact will be sustained unless there is an abuse of discretion." Commonwealth v. Cosby, 224 A.3d 372, 426 (Pa.Super. 2019) (internal quotation marks omitted), appeal granted in part on other grounds, 9 MAL 2020, 2020 WL 3425277 (Pa. June 23, 2020).

While "[t]he right to be judged by a fair and impartial jury of one's peers is, of course, firm and well-established," our Supreme Court has held "that not every act of juror misconduct warrants the declaration of a mistrial." Commonwealth v. Flor, 998 A.2d 606, 639 (Pa. 2010) (citations omitted). Rather, "[o]nly when there has been prejudice to the accused does an act of juror misconduct require the granting of a new trial." Id. The moving party bears the burden of proving prejudice. See Commonwealth v. Pope, 14 A.3d 139, 145 (Pa.Super. 2011).

Here, after the jury was empaneled, but before opening statements were made, Juror #113 expressed her frustration at having to cancel several doctors' appointments by saying aloud in the jury room," this is great, so he kills someone, and I have to rearrange my whole life." N.T. Trial, 8/5-7/19, at 150. Juror #337 later reported the comment to the court. After interviewing each of the jurors, the trial court removed Juror #113 and replaced her with an alternate, but denied Appellant's motion for a mistrial.

Appellant's argument that he was prejudiced by Juror #113's misconduct, such that a new trial was required, is as follows in its entirety:

It is clear that Appellant was prejudiced as a result of the statement. Juror #113 made the statement following jury selection but before opening statements. The jurors discussed the comment and felt it was necessary to bring it to the trial court's attention. Further, as stated above, Juror #337 was so upset that she began to cry when questioned by defense counsel. As such, Appellant could not have a fair and impartial trial based upon the statements of Juror #113.

Appellant's brief at 14 (citations omitted).

The trial court explained its conclusion that no mistrial was warranted as follows:

Juror #337 approached the tipstaff and law clerk of this Court and informed them of the comments of Juror #113. This information was then relayed by the staff to the court. Subsequently, each juror was brought out, one at a time, to the witness stand and questioned. Each juror was questioned by the court, the assistant district attorney, and the defense attorney. Jurors were asked whether they heard the statement and whether or not it would have any influence over their respective abilities to sit as jurors and be impartial in weighing the facts presented at trial. Each juror indicated that they either did not hear the statement, or that they heard it and were concerned over the ability of Juror #113 to be impartial. All jurors who heard the statement indicated that it would not influence their deliberations and they could remain fair and impartial.

. . . .

Through th[e] court's questioning of each juror regarding the incident, and the indications from the jury panel that these statements would not influence or color their ability to sit as objective jurors in this case, th[e] court denied the request for a mistrial. While the court was initially concerned that the jury panel may have been exposed to extraneous information from Juror #113, it became clear as we questioned each juror individually that the only information the panel received from this

- 6 -

juror was her opinion which was a result of her frustration in being selected. Her opinion in no way related to a central issue in the case, did not provide the jury with any information they did not have before them at trial and was not emotional or inflammatory in nature. The court found the testimony of the individual jurors to be credible and determine[d] that an objective typical juror would not be affected by her comments. The burden of proving whether this extraneous influence was prejudicial is on the moving party and the court finds that Appellant has failed to sustain this burden.

The grounds for a mistrial must be so severe and uncorrectable that a party is denied a fair and impartial trial. This Court determined that the grounds sought for a mistrial were corrected by removing the juror in question and questioning the remaining jurors who all indicated that they could proceed in a fair and impartial manner. As such, we believe that a mistrial would have been an improper remedy[.]

Trial Court Opinion, 1/29/20, at 6-7 (citations and unnecessary capitalization omitted).

From this, it is clear that the trial court followed the applicable law to the letter. Further, its factual determinations are supported by the record. Each juror who actually heard what Juror 113 said understood it as an expression of frustration that she had to cancel specialist medical appointments that had been difficult to obtain, not as an indication that she had knowledge of facts or evidence that pointed to Appellant's guilt. See N.T. Trial, 8/5-7/19, at 118-48. Additionally, none of the jurors in the juror room expressed agreement with Juror 113's opinion, and they all stated unequivocally to the court that her statement would not interfere with their abilities to render a fair and impartial decision based upon the evidence and the court's instructions. Id. There is no basis for us to conclude that the trial

court abused its discretion in concluding that a mistrial was unwarranted because Appellant was not prejudiced.  Appellant's first issue is meritless.

We next consider Appellant's evidentiary challenges, mindful of our standard of review.

> The admissibility of evidence is a matter addressed solely to the discretion of the trial court, and may be reversed only upon a showing that the court abused its discretion.  For there to be abuse of discretion, the sentencing court must have ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Johnson, 179 A.3d 1105, 1119-20 (Pa.Super. 2018) (internal citations and quotation marks omitted).

Appellant contends that the trial court improperly denied his motion in limine seeking to exclude hearsay evidence.  More specifically, Appellant claims that the trial court erred in allowing the Commonwealth to introduce hearsay evidence in two instances: (1) statements of the officers made during the interrogation of Appellant; and (2) statements made by third parties in recorded telephone calls Appellant made from jail.  See Appellant's brief at 14-18.

Hearsay is an out-of-court statement offered for the truth of the matter asserted.  See, e.g., Commonwealth v. Manivannan, 186 A.3d 472, 482 (Pa.Super. 2018).  A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a).  "Communications that are not assertions are not hearsay.

These would include questions, greetings, expressions of gratitude, exclamations, offers, instructions, warnings, etc." Pa.R.E. 801, Comment. Further, "[a]n out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement." Commonwealth v. Busanet, 54 A.3d 35, 68 (Pa. 2012).

Appellant does not challenge the admission of the out-of-court statements he made during the interview or the telephone conversations. Such statements may be entered into evidence pursuant to the hearsay exception for admissions by a party. See Commonwealth v. Simmons, 662 A.2d 621, 635 (Pa. 1995) ("[V]oluntary extrajudicial statements made by a defendant may be used against a defendant even though they contain no admission of guilt.").

As to the phone calls, Appellant only generally complains about hearsay without indicating what particular statements were improperly admitted. The closest he comes to identifying hearsay in the phone conversations is to state "certain conversations included celebrations that Appellant would be released on the basis that the victim died from a medical emergency as opposed to a gunshot wound." Appellant's brief at 18-19.

As to the interrogation, Appellant cites numerous statements made by the officers which he contends constituted inadmissible hearsay. See id. at 15-17. For example, Appellant claims that the following were improperly-admitted hearsay statements:

Tony, how do you explain the gun? Let's go back to the gun. How do you explain the gun?

We have the gun.

We have the gun that you handed Robert. Do you want to know where it was found? It was found in the back storage shed behind there. He put it there.

She had a family. Don't you think her family deserves the truth?

. . . .

I want to know what happened. Why did you shoot your friend?

I'm telling you, everybody that we spoke with today has already told us that you two were the only two in that vehicle. All right? You're seen coming out of the vehicle after a gunshot is heard handing a firearm off to Robert. He runs it in the house. Comes back out and helps you move her to where she's safe. Marcus helps you. Tony we know. We just want (unintelligible). That other chick helped you. That other chick drove around you guys and then comes over and helps too.

. . . .

Robert running out. You hand him the firearm. He put it in his waste (sic) band. He runs it into the house. He comes out. He helps you carry her.

Handing him a firearm and running it to the house. So you could get the fuck rid of it. That's why.

Id. at 15-16.

The trial court offered the following rationale for allowing the entirety of the interrogation and phone conversations to be played:

We . . . believe that attempting to extract the questions and just play the answer for the [j]ury would lead to confusion since the jurors would have no context for the answer without a preceding question. As such statements are relevant to the case at bar, are

- 10 -

not unfairly prejudicial to Appellant, and the omission of the same could lead to confusion and misleading of the jurors, it was proper to play the tapes in their entirety for the jury[.]

Trial Court Opinion, 1/29/20, at 9.

We discern no error or abuse of discretion. Most of the "statements" about which Appellant complains do not constitute hearsay either because they are not assertions or they were not offered to convince the jury as to the truth of the matter asserted. First, questions are not assertions, and thus are not hearsay. See Pa.R.E. 801, Comment. Second, there was nothing improper about admitting statements that were not offered to prove the truth of the matters asserted, but to explain why Appellant made the statements that he made in response. It is obvious that the Commonwealth did not offer the evidence to establish that the victim had a family, that the victim's cause of death was not a gunshot wound, or that the police had the gun.

To the extent that the statements of other witnesses to the events of the evening in question arguably could have been considered for their truth rather than to provide context for Appellant's statements, this Court has ruled that they need not be redacted from the interrogation of the defendant if the witnesses testify at trial and are subject to cross-examination. In Commonwealth v. Kitchen, 730 A.2d 513 (Pa.Super. 1999), the trial court issued a pretrial ruling that the Commonwealth could not offer, inter alia, "any police comments that informed [the defendant] that there were witnesses who had enlightened them regarding [her] connection to the murder." Id. at 521.

Specifically, the videotaped interrogation of the defendant included statements made to her by police officers indicating that they would not be accusing her of murder if they did not have a solid case, that witnesses had connected her to the murder, and that her paramour co-defendant was in custody. Id. at 518.

This Court reversed the prohibition, explaining as follows:

[W]e fail to see why such comments should be excluded from the tapes since the criminal complaint and attached affidavit of probable cause reveal the identity of these witnesses and the Commonwealth avers that they will testify at [the defendant's] trial. The comments were not prejudicial to [the defendant], were not inflammatory and do not constitute hearsay evidence since the witnesses will allegedly testify at [the defendant's] trial and can be cross-examined by [her] counsel. Hence, any comments regarding witnesses who will connect [the defendant] to the murder can be included in the videotapes displayed to the jury.

Id. at 521.

The instant appeal is not materially distinguishable from Kitchen. As the Commonwealth aptly and succinctly explains:

[The troopers interrogating Appellant] informed [him] that they could connect [him] to the murder of the victim based on statements from eyewitnesses, including Keith Lewis, Daesha Body, Rankin Martz, and Robert Harris, Jr. All of these witnesses testified at trial and were subject to cross-examination by Appellant. Based on Kitchen, those statements did not constitute hearsay and were not inflammatory.

Commonwealth's brief at 11. Accordingly, Appellant's second and third issues lack merit.

In his final issue, Appellant seeks to challenge the discretionary aspects of his sentence. The following legal principles govern our consideration of his claim:

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

Commonwealth v. Lucky, 229 A.3d 657, 663–64 (Pa.Super. 2020) (internal quotation marks omitted).

Appellant filed a timely notice of appeal and preserved the issue in a timely post-sentence motion seeking reconsideration of his sentence. Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Thus, we consider whether Appellant has raised a substantial question.

Appellant avers that the aggregate sentence is unreasonable and excessive in light of the conduct at issue, and that the trial court failed to articulate a reasonable basis for imposing statutory maximum sentences on all counts. See Appellant's brief at 20. We conclude that Appellant has raised substantial questions. See, e.g., Commonwealth v. Vega, 850 A.2d 1277,

1281 (Pa.Super. 2004) (determining the appellant raised a substantial question with the claim that the sentence was grossly disproportionate to "the facts surrounding the criminal episode and his background"); Commonwealth v. Simpson, 829 A.2d 334, 338 (Pa.Super. 2003) (holding substantial question was presented by allegation that trial court failed to state sufficient reasons for the sentence imposed). Accordingly, we proceed to review the merits of his challenge.[1]

"When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." Commonwealth v. Edwards, 194 A.3d 625, 637 (Pa.Super. 2018) (cleaned up). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." Commonwealth v. Macias, 968 A.2d 773, 778 (Pa.Super. 2009). Hence, we review the sentencing court's sentencing determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

---

[1] In the body of his brief, Appellant also argues that the trial court improperly punished him for crimes of which he was acquitted. See Appellant's brief at 23. Since that claim was not raised in Appellant's post-sentence motion or his Pa.R.A.P. 2119(f) statement, it is not preserved for our review.

Commonwealth v. Antidormi, 84 A.3d 736, 760 (Pa.Super. 2014).

While its discretion is broad, "the trial court's discretion is not unfettered." Commonwealth v. Coulverson, 34 A.3d 135, 144 (Pa.Super. 2011). "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." Antidormi, supra at 761 (citations and quotation marks omitted). "And, of course, the court must consider the sentencing guidelines." Coulverson, supra at 144 (cleaned up). The sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

The trial court addressed Appellant's sentencing challenge as follows:

> Upon sentencing Appellant, this court took into consideration the number of offenses to which the Appellant was convicted of, the [PSI] report, the extensive prior record of the Appellant, the sentencing guidelines, the rehabilitative needs of the Appellant and the gravity of the offenses and felt any lesser sentence would depreciate from the seriousness of the crimes committed.
>
> The jury found that Appellant murdered victim and committed the other crimes as charged. The court listened to several victim impact statements and through these statements, it was made clear to the court what a tragic effect the loss presented to the loved ones of the victim.

. . . After reviewing the [PSI] report and considering the facts and circumstances of the case, Appellant's sentence was neither inconsistent with the sentencing code provisions nor contrary to the fundamental norms underlying the sentencing process. This court considered that a hospital with an emergency department was a very short distance from the scene of the crime, but that Appellant made no attempt to procure medical care for the victim. Rather, he sought to protect himself from punishment by trying to conceal the firearm and her body in a nearby residence in a cold and callous fashion.

Therefore, the court finds no reason why Appellant should be entitled to any lesser sentence due to a "volume discount."

Trial Court Opinion, 1/29/20, at 11-12 (unnecessary capitalization omitted).

We first observe that, because the court considered the PSI, we presume that it properly considered and weighed all relevant sentencing factors). See, e.g., Commonwealth v. Kitchen, 162 A.3d 1140, 1147 (Pa.Super. 2017). Additionally, the record confirms that the trial court heard impact statements from six members of the victim's family, including her parents, sister, and daughter. See N.T. Sentencing, 9/26/19, at 5-22. The Commonwealth requested the maximum sentence on each count, citing Appellant's lack of remorse and failure to be rehabilitated after having been in and out of jail since he was sixteen years old. Id. at 22. The court declined to follow the Commonwealth's recommendation, imposing no penalty on one of the firearm convictions. Further, given Appellant's prior record score of RFEL, the sentences imposed were all either within the standard range or aggravated range of the guidelines. See id. at 25-27. The court stated on the record its consideration of the seriousness of the crimes and Appellant's rehabilitative

needs, and it concluded that any lesser sentence would not sufficiently address his actions and need for "correctional treatment." Id. at 28. Appellant admitted that he "accidentally shot [his] homie," yet he not only failed to call 911 or take her across the street to the hospital, but he feigned ignorance when medical personnel arrived, and the victim thereafter died of cardiorespiratory arrest from the bullet that punctured her lung.

Upon this record, we discern no indication that "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." Antidormi, supra at 760. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2020